**Opinion issued November 3, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00559-CV

————————————

## NANCY ALANIS, Appellant

### V.

## US BANK NATIONAL ASSOCIATION AS SUCCESSOR TRUSTEE TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO ONE LASALLE BANK, N.A. AS TRUSTEE FOR THE MLMI TRUST SERIES 2006-HE6, BAC HOME LOANS SERVICING, LP, AS SUCCESSOR BY MERGER TO WILSHIRE CREDIT CORPORATION, AND THE LAW OFFICES OF MANN & STEVENS, PC, Appellees

### &

## US BANK NATIONAL ASSOCIATION AS SUCCESSOR TRUSTEE TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO ONE LASALLE BANK, N.A. AS TRUSTEE FOR THE MLMI TRUST SERIES 2006-HE6, AND BAC HOME LOANS SERVICING, LP, AS SUCCESSOR BY MERGER TO WILSHIRE CREDIT CORPORATION, Cross-Appellants

### V.

On Appeal from the 408th Judicial District Court
Bexar County, Texas
Trial Court Case No. 2010-CI-07833

O P I N I O N

Appellant and cross-appellee, Nancy Alanis, sued appellees, US Bank National Association ("US Bank"), BAC Home Loans Servicing, L.P. ("BAC"), and the Law Offices of Mann & Stevens ("Mann & Stevens") for fraud and violations of various debt collection statutes relating to the foreclosure of her property in San Antonio, Texas.[1]  Following a jury trial, the trial court rendered judgment in part based on the jury's verdict and in part based on the various motions for judgment notwithstanding the verdict ("JNOV") filed by the parties.  It awarded Alanis damages for US Bank's violation of the Texas Fair Debt Collection Practices Act ("FDCPA") and for BAC's common-law fraud, including attorney's fees.  The trial court rendered a take-nothing judgment in favor of Mann & Stevens.

---

[1]  This appeal was transferred from the Fourth Court of Appeals to this Court pursuant to the Texas Supreme Court's docket equalization powers. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2013).

In six issues, Alanis argues that the trial court erred by: (1) failing to grant declaratory judgment voiding the deed of trust lien pursuant to Texas Constitution article XVI, section 50(a)(6)(Q)(x); (2) failing to grant declaratory judgment setting aside the foreclosure based on the appellees' violations of the Texas Property and Finance Codes; (3) failing to grant declaratory judgment setting aside the foreclosure because she performed under the deed of trust and timely remitted mortgage payments for the alleged periods of default; (4) granting Mann & Stevens' JNOV on the basis of its bona fide error affirmative defense; (5) applying a settlement credit and the jury's finding of proportionate liability to reduce her damages; and (6) denying her post-judgment motions, including her motion for JNOV and motion for new trial.

Cross-appellants US Bank and BAC argue that (1) the award of out-of-pocket damages in the amount of $95,000 to Alanis was against the great weight and preponderance of the evidence because Alanis failed to provide any evidence supporting an award of this amount; (2) the award of attorney's fees improperly included amounts for claims for which attorney's fees were not recoverable and improperly included amounts attributable to the claims against a settling defendant; and (3) the trial court incorrectly assessed post-judgment interest as accruing on September 14, 2013—the last day of trial—and not the date the final judgment was entered.

We affirm in part and reverse and render in part.

## Background

In 2006, Alanis owned a duplex located at 1040 Blanco Road in San Antonio, Texas, (the "Property") that was damaged when a neighbor's tree fell on the roof. To enable her to make the necessary repairs, Alanis obtained a home equity loan for $96,000 from CIT Loan Corporation *f/k/a* CIT Group Consumer Finance Inc. ("CIT"), which was also the original servicer of the loan. A few months later, in October 2006, CIT assigned the loan to Wilshire Credit Corporation. BAC, one of the defendants in the trial court, succeeded Wilshire as the loan servicer as the result of a merger. Through a series of assignments, including to LaSalle Bank, N.A., and Bank of America, N.A., US Bank became the owner of the loan by the time of trial.

The promissory note signed by Alanis in 2006 provided that the principal balance on the loan was $96,000 and that Alanis was to make monthly payments of $849.57. The promissory note provided that Alanis was required to "pay principal and interest by making payments every month" and that she must "make [the] monthly payments on the same date of each month beginning on [09/01/06]." Regarding prepayments, the promissory note provided in relevant part that "[t]he Note Holder will use all of my prepayments to reduce the amount of principal that I [the borrower] owe under this Note. If I make a partial prepayment, there will be

4

no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes." The promissory note further provided that a late fee of "5% of the unpaid amount of the payment" might be charged if a payment was more than ten days late and that the loan would be considered in default if Alanis did not pay the full amount of each monthly payment on the date it was due.

No escrow account was created at the time the loan was funded, as Alanis had provided a non-escrow affidavit. Alanis was obligated under the terms of the deed of trust to pay the taxes and maintain insurance on the property. The deed of trust provided that it "secures an extension of credit defined by Section 50(a)(6), Article XVI, Texas Constitution" and that all of the terms and conditions of that section "for creating a valid lien on a homestead have been fully satisfied." The deed of trust further provided that Alanis was required to make payments in accordance with the terms of the promissory note.

Regarding the application of payments, the deed of trust provided:

Unless applicable law provides otherwise, all payments received by Lender under the Note [and the Deed of Trust's payment provisions] shall be applied by Lender first to accrued interest due on the Note, then to the principal due on the Note and then to other charges, if any, as stated in the Note or this Deed of Trust.

Eventually, problems arose between Alanis and the lender resulting in the lender's foreclosing on the Property on January 5, 2010, and instituting eviction

5

proceedings. Alanis's challenge to the eviction proceedings in the justice court was unsuccessful. However, she subsequently filed the instant suit in district court, complaining of the actions of her original lender and servicer CIT and Vericrest Financial, Inc. ("Vericrest"), and the successors in interest, including current litigants US Bank and BAC, and the law firm, Mann & Stevens, in foreclosing on her Property. She asserted numerous causes of action, including trespass to try title, violations of the False Lien Statute, fraud, conspiracy, breach of contract, violations of the FDCPA and its federal counterpart, violations of the Texas Constitution's provisions regarding home equity loans, negligence, and wrongful foreclosure, and she sought declaratory judgment voiding the foreclosure. Alanis eventually settled with CIT and Vericrest and proceeded to trial on her claims against US Bank, BAC, and Mann & Stevens. The only claims submitted to the jury were for violations of the FDCPA and False Lien Statute and for common-law fraud.

At trial, Alanis testified that at the time she obtained the loan from CIT she lived on the Property, which is a duplex with one unit on the ground floor and another on the second floor that had also been used at one point as office space. She asserted that she obtained permission from CIT to make "bundled" payments, i.e., to make a single payment that would be applied to multiple months, because she was traveling a lot to care for her ailing mother. Alanis also testified that

6

although the terms of the loan required that she maintain the Property as her homestead for one year after obtaining the loan, CIT agreed that she could move out of the Property approximately six months after obtaining the loan as long as her brother remained living on the Property. Alanis did not provide any written agreements between herself and CIT adopting these amendments to the original loan documents.

Alanis continued making bundled payments after CIT assigned the note, and the new loan servicer—at that time, Wilshire—objected to this practice as being a violation of the terms of her note. The loan servicer's log listing the transactions and communications regarding Alanis's loan was admitted at trial and showed multiple communications in writing and on the phone between Alanis and the lender on this issue. Beginning in early 2007, the log shows that Wilshire reported Alanis's nonpayment of her loan. Alanis contacted Wilshire, seeking to have her single large payments applied to multiple months, rather than to the unpaid principal as provided in the loan documents. According to the log, Wilshire agents advised Alanis on multiple occasions that she could not make payments for multiple months at one time.

Wilshire also asserted that it was required to force-place an insurance policy in 2007 when Alanis's insurance coverage lapsed, a contention which Alanis

7

disputed. Wilshire charged Alanis various fees and other expenses, such as late fees, fees for inspections, and legal fees, which she likewise disputed.

Regarding her payment history, Alanis testified that she did not miss any payments. At trial, she presented evidence that she sent two payments of $1,000 on December 12, 2007, and one payment of $550 on December 31, 2007, for a total of $2,550, which she intended to be applied to her loan repayment for January, February, and March 2008. Alanis remitted another "bundled" payment of $2,550 for April, May, and June 2008. Alanis also provided evidence that she remitted payments for the remainder of 2008 and for each month of 2009.

Alanis testified that, after the loan was sold in the fall of 2006, she believed, based on a phone conversation with Wilshire's customer service department, that she could continue making bundled payments. However, in the fall of 2008, after she received a notice of default, Alanis testified that she became aware that she was not allowed to make bundled payments and ceased doing so.

Alanis testified that she continued to disagree with Wilshire's position that her bundled payments, lapse in insurance coverage, and non-payment of various fees had resulted in her default on the loan. Alanis testified that she never received notice that the lender was instituting an escrow account on her loan. However, she acknowledged that she received an escrow disclosure dated April 24, 2008, demonstrating that a forced-place insurance policy had been placed on her Property

8

and the resulting escrow account instituted. Alanis testified that she complained about the escrow account to Wilshire. She testified that she did not miss any property tax payments or insurance payments. Accordingly, she contacted Wilshire and told them she had signed a non-escrow affidavit with her original lender, CIT. Alanis proffered tax records demonstrating that she had made the required tax payments on the Property between 2006 and 2009.

Regarding her insurance coverage, Alanis testified that she did not let her coverage lapse. She testified that she switched insurance carriers in 2007, but there was never any period of time that she did not have insurance in place. Alanis also testified:

> [A]t a certain point in time, I believe it was in September 2009, I received a notice—after I paid in full my insurance, I received a notice that my insurance had been canceled. And I promptly called the insurance company to make the inquiry, and I wasn't able to get a resolution. So I ended up repurchasing a policy for the property because I never was able to make a determination on who canceled that policy, how it happened to get canceled. And so I went ahead and repurchased another policy as soon as I found out.

Alanis did not produce any evidence other than this testimony that she had maintained insurance coverage on the Property.

On January 13, 2009, Wilshire, BAC's predecessor, sent a letter to Alanis informing her that she was in default on her loan and that she must pay $6,336.68 to bring it current. Wilshire retained Mann & Stevens to initiate foreclosure proceedings on Alanis's property. On January 14, 2009, Mann & Stevens sent

9

Alanis a "Notice of Representation for Collection" informing Alanis that the owner and holder of the promissory note and deed of trust had referred the matter to the firm for collection. The notice further stated, "As you know, the Note is seriously in default. We have been advised that the principal balance on the debt is $92,551.57, plus interest accruing from the date of default, late charges, expenses of collection, and legal fees." The notice also provided:

> [U]nless you, within 30 days after the receipt of this notice, (the "Thirty-Day Period") dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by this firm. If we are notified in writing within such Thirty-Day Period that the debt, or any portion thereof, is disputed, verification of the amount of the debt as well as the name and address of the original creditor, if different from the current creditor, will be provided to you.

The accompanying "Notice of Default and Notice of Intention to Accelerate" stated that "[t]he Note is in default as a result of missed monthly payments. The amount needed to bring your loan current is $6,336.68." Acting on behalf of its clients, Mann & Stevens also filed an application for foreclosure on the property, asserting that Alanis had failed to make required payments.

Alanis stated that when she received this default notice in January 2009, she believed that some kind of accounting error had occurred, and she contacted Wilshire. She also testified that she was not aware of the purposes of some of the fees that were cited in the default notice as having gone unpaid. She stated at trial that she did not believe she should have had to pay certain fees, including the fees

for inspections, for obtaining a "broker's price opinion," or for certain legal services. Alanis testified that she believed she was current with her taxes, insurance premiums, and loan payments at that time.

Alanis also testified that she attempted to contact Mann & Stevens once by phone immediately following her receipt of the January 14, 2009 letter, but was unable to speak with an attorney. She admits that she did not send anything in writing to Mann & Stevens at that time. Alanis eventually contacted the Texas Office of Consumer Credit, and that office directed her to the vice-president and in-house counsel for Wilshire, Danny Tye.

Alanis testified that she believed the situation was going to be corrected following her phone call with Tye in February 2009. Alanis stated that her understanding following this discussion was that, in return for her providing proof of her December 2008 payment, "he was going to remove fees, he was going to reapply my bundled payments to all the months, . . . that [she] was no longer supposed to regard any of the Wilshire or Mann & Stevens, P.C. notices, and from that point he was going to step in and take care of everything." Alanis stated that she faxed a copy of her December 2008 payment to Wilshire promptly after making this arrangement with Tye.

In a letter dated February 23, 2009, Tye summarized his conversation with Alanis and the resulting arrangement made on Alanis's behalf. Tye stated,

11

"Pursuant to your request, we have reapplied your bundled payments, and in the interest of good faith, I have deleted all late payment fees and all but one property inspection fee. For your information, I have enclosed a reinstatement letter. As you can see, your loan is still due for December 2008." Tye further stated,

> I also want to clarify several issues. First, Wilshire never agreed to change the terms of your loan so that you could make bundled payments, and you have not provided any written modification of your note or deed of trust that proves that the prior loan holder agreed to accept bundled payments. Indeed the document you provided as alleged proof is an unsigned handwritten note, not a written agreement which is required to modify your loan. Wilshire is simply requesting that you perform under your loan documents as they are written. Wilshire has currently agreed to reapply your payments as a courtesy, but this does not change or modify the terms of your loan.
>
> . . . .
>
> I have stopped the foreclosure action, but Wilshire will need to immediately restart the action if you cannot reinstate your loan or agree to a payment plan.

Alanis testified that she received Tye's February 23 letter and believed it accurately summarized their conversation. She testified that she received another reinstatement letter dated February 24, 2009, listing charges and fees that she was required to pay. She testified that she was "shocked initially" and "concluded that [she] was being advised to once again remit duplicate loan payments" for months for which she had already made a timely payment. Alanis believed that the February 24 letter was "just an egregious accounting error by the loan servicer." She likewise did not believe that she needed to pay the escrow advance fees and

12

interest because she had signed the non-escrow affidavit and had paid her own taxes and insurance. She stated that she still believed at that point that the issues were going to be resolved through her conversation with Tye.

Alanis agreed at trial that Wilshire performed the actions as represented in Tye's letter. She further testified that she faxed proof of her December 2008 payment to the contact person designated by Tye in his letter. Alanis also stated that she subsequently sent proof of insurance and payment of taxes. However, she did not dispute that she never paid the amounts listed in the February 2009 reinstatement letter.

Accordingly, on April 8, 2009, Wilshire again sent Alanis a notice of default, stating that she owed $5,639.02, including amounts due as a result of various identified fees and charges. On April 9, 2009, Mann & Stevens also sent a notice to Alanis informing her that her loan was in default due to missed monthly payments and that the amount necessary to bring her loan current was $5,639.03.

Alanis testified that her April 1, 2009 payment was returned to her, and that made her feel very frustrated. She was "outraged" and "shocked" by the list of charges and fees that were set out in the April 8 letter from Wilshire. She also testified that the difficulties with the property caused her a lot of stress and that she "would literally have like clumps of hair when I would brush my hair, and I was

13

told it was due to stress." She also testified that she had a throbbing pain in her eye and "gradual severe insomnia."

At trial, she argued that Wilshire knew that proceeding with collection on the note was wrong and relied on an entry from Wilshire's log dated early 2009 that stated, "DON'T USE THE RI FIGS ABOVE BECAUSE IT'S NO LEGAL F&C PER DANNY TYE'S REQUEST [sic]," to demonstrate that Wilshire knew it should not proceed with foreclosure. Alanis argued that this entry meant that Wilshire was aware that the foreclosure was not legal. US Bank and BAC asserted that this entry was a notation that Danny Tye removed the charge for certain legal fees and costs related to the foreclosure from Alanis's account, as indicated by subsequent statements of Alanis's account that no longer charged those fees against her.

Alanis testified that she attempted to contact Mann & Stevens again after receiving the April 2009 letter from them, but she was unsuccessful in discussing the matter with the firm. She further testified that she did not pay the amounts identified in the letters and that she "was acting in principle" because she was not behind on her taxes, insurance, or payments and "was not going to let a law firm come and seek funds from [her] that [she] didn't owe." She thought she would have a chance to prove that the amount the loan servicer claimed she owed was wrong.

14

On May 11, 2009, Mann & Stevens filed an application for foreclosure. It also sent Alanis a notice of acceleration, asserting that Alanis's loan repayment was being accelerated due to her nonpayment of past-due mortgage loan installments and other amounts legally due.

Alanis asserts that, on May 24, 2009, she mailed a dispute letter to Mann & Stevens. However, Diana Stevens, shareholder of Mann & Stevens, testified that Mann & Stevens never received the letter. On September 18, 2009, Mann & Stevens, acting on behalf of the lender and servicer, obtained a default order allowing it to proceed with the foreclosure on the Property, and on December 15, 2009, Mann & Stevens notified Alanis that the Property was scheduled for a foreclosure sale. On January 5, 2010, the Property was sold at a foreclosure sale and was purchased by US Bank. Mann & Stevens then instituted eviction proceedings, and, at some point, new locks were placed on the upstairs unit of the duplex, although Alanis's brother continued to live in the downstairs unit.

Alanis also testified that she did not receive any notice of the application of foreclosure and that she "had no knowledge that anything had been filed in court records." She continued making payments through January 2010 when the Property was sold in the foreclosure sale. She testified that she discovered the Property had been foreclosed on when a friend of hers, who was a real estate broker, contacted her about it. Alanis testified that at time of the foreclosure her

15

brother lived in the Property, and he subsequently received an eviction notice in February 2010. Alanis stated that she lost the eviction proceedings but was apprised that she could challenge the foreclosure in state district court, so she filed the instant litigation.

Stevens testified at trial regarding Mann & Stevens' involvement in Alanis's case. She stated that the firm was retained by the loan servicer at the time, Wilshire, to handle the foreclosure proceedings related to Alanis's Property. The client provided the information the firm used to start the foreclosure process. Stevens further testified that the letters Mann & Stevens generated and sent to Alanis were created by inputting information it received from its client into the firm's document forms. Stevens stated that, prior to sending out letters, the firm would typically review the documents that were sent by the client, such as copies of the loan documents and the relevant payment history. Stevens also outlined the firm's standard procedure for reviewing information that was provided by its clients:

> We would do what we called a first check and second check process where we would review the information that the client provided to us, and someone would basically proofread what was in our database to make sure that all of the information the client had given us had been properly entered into our system.
> If there were any mistakes, typos, missing information, it would go back to an individual who would make the corrections in our system, and then we would do what's called a second check where a different individual—a different employee would review the file against and make sure of two things. First, that if there had been any

16

corrections needed from the first check process that those corrections had been made, but also to make sure that nothing else had been missed during the first check process.

Specifically regarding Alanis's case, Stevens stated that the firm was first hired in December 2008 and sent a first notice to Alanis in January 2009. The client subsequently informed Mann & Stevens to place the file on hold and not to proceed with the foreclosure because the lender was attempting to resolve the matter with the borrower. Stevens testified that she was not aware of any arrangements between Alanis and Danny Tye at that point in time, but she also stated that, in her experience, it was fairly common for a lender to attempt to resolve problems with the borrower before completing the foreclosure process. Stevens stated that, after the firm was told to put the file on hold, it "eventually received instructions to stop the foreclosure completely and to bill the file." However, "a couple of months later," Wilshire requested that the firm restart the foreclosure process.

Regarding the April 9, 2009 notice that Mann & Stevens sent to Alanis, Stevens testified that when the firm's client requested that it restart the foreclosure process, in April 2009, the client sent a "breakdown" of the amount due on Alanis's account. However, Stevens also testified that the firm was not aware of any additional communications between Alanis and its client as recorded in Wilshire's log detailing its contact with Alanis. Stevens further asserted that she

17

did not believe that Mann & Stevens relied on false information when it foreclosed on Alanis's property. She testified that she had no records indicating that Alanis had made any contact with the firm, either in writing or by phone. She also stated that Mann & Stevens did not receive any funds from Alanis during the course of the foreclosure.

Alanis testified about the amount of time she spent dealing with the Property. She testified that she made many phone calls, that she spent many hours doing legal research and trying to figure out what had happened, and that she spent "probably about 300 hours" fighting the eviction. She testified that she had spent approximately 3,000 hours all together dealing with these issues.

Alanis's attorneys, Philip M. Ross and Mike Sices, testified regarding the amount of attorney's fees Alanis incurred in this case and sought a total of $207,150 in trial-level attorney's fees.

Alanis submitted to the jury claims against BAC, US Bank, and Mann & Stevens for breach of the FDCPA, and the jury found that BAC, US Bank, and Mann & Stevens each used "a fraudulent, deceptive or misleading representation" while engaging in debt collection, in breach of that statute. However, the jury found that BAC's violation of the FDCPA was the result of a bona fide error. Regarding US Bank and Mann & Stevens, the jury found that those entities were not entitled to the bona fide error defense.

Alanis also submitted to the jury claims against BAC and US Bank for violations of Texas Civil Practice and Remedies Code section 12.002, also known as the Fraudulent Lien Statute. However, the jury found no violations of the Fraudulent Lien Statute. The jury did find, however, that BAC committed common-law fraud against Alanis.

The jury also found that Alanis's own negligence was a proximate cause of her injuries, and it apportioned liability between Alanis and Mann & Stevens for Alanis's harm. The jury found Alanis 45% responsible for her harm and Mann & Stevens 55% responsible. The jury likewise apportioned responsibility among Alanis, BAC, and US Bank, finding Alanis 30% liable for her harm, BAC 60% liable, and US Bank 10% liable.

The jury found Mann & Stevens liable to Alanis for $20,000 in mental anguish damages as a result of its finding that Mann & Stevens violated the FDCPA. The jury found BAC and US Bank liable to Alanis for $30,000 in mental anguish damages, $95,000 in out-of-pocket expenses, $10,000 in loss of use, and $66,600 for "lost time." The jury also found that Alanis incurred $207,150 in attorney's fees. It made no findings in support of an award of exemplary damages.

Alanis moved for entry of judgment on the jury's verdict, and she asked that the trial court award her court costs and pre- and post-judgment interest. Alanis also asserted in her post-trial motions that the trial court should disregard the jury

finding that neither US Bank nor BAC violated the Fraudulent Lien Statute. In her motion for entry of judgment and in subsequent post-trial motions, Alanis also asked the trial court to declare the foreclosure void, and she argued that the issue could be resolved as a matter of law.

Mann & Stevens also moved for JNOV. It argued that it was entitled to have the trial court render a take-nothing judgment in its favor because Alanis's claims were "barred by the qualified immunity for foreclosure counsel and the judicial proceedings privilege." In the alternative, it asked the trial court to disregard the jury's finding that it had not committed a bona fide error and to enter JNOV on its affirmative defense of bona fide error. The firm argued that it established its entitlement to the defense as a matter of law and that it was entitled to a finding in its favor on the defense because the jury already had made a finding of bona fide error in favor of its client, BAC. Mann & Stevens asserted that because BAC was granted the bona fide error defense and it relied upon the information generated by BAC, it should also be entitled to the affirmative defense of bona fide error.

US Bank and BAC also moved for entry of judgment and for JNOV. Specifically, US Bank and BAC argued that the trial court should disregard the jury's finding of $95,000 in out-of-pocket expenses and the jury's finding on fraud. They also asserted that the trial court should decrease Alanis's damage award in

accordance with the jury's finding of her comparative fault and award them a settlement credit for Alanis's pre-trial settlement with Vericrest.

The trial court rendered its final judgment on April 2, 2014, resolving the motions for JNOV. It found that Mann & Stevens was "entitled to the '[b]ona fide' error defense thereby resolving the conflict in a jury response stating otherwise because Defendant, BAC, was granted a 'bona fide' error finding." Accordingly, the trial court rendered a take-nothing judgment as to Mann & Stevens.

The trial court further found that Alanis's action sounded in both contract and tort. The trial court concluded that, because Alanis's action was partially a contract cause of action, "recovery for lost time [was] not permitted under existing case law." It found that "the attorney's fees testified to at trial . . . were segregated and discounted, as to actions in which attorney's fees are recoverable." Finally, the trial court found that Alanis settled with Vericrest before trial and "that because of said settlement a credit is due [to US Bank and BAC] in calculating the judgment."

The trial court awarded Alanis $30,000 in mental anguish damages, $95,000 in out-of-pocket expenses, and $10,000 for loss of use of the property. It stated that this amount was subject to a credit of $35,000 based on Alanis's pretrial settlement. The trial court also found that BAC and US Bank were "entitled to a

credit of an additional 30% of the recovery due to [Alanis's] negligence as found by the jury." Accordingly, the trial court awarded Alanis $70,000 total in damages and $207,150 in attorney's fees, which it found were reasonable. Finally, the trial court ordered that the total amount of the judgment "will bear post-judgment interest at a rate of 5% from September 14, 2013 until paid."

Alanis subsequently filed a motion for new trial based on the discovery of new evidence. The trial court denied this motion. This appeal followed.

## I. ALANIS'S APPEAL

Alanis asserts six issues on appeal. In her first three issues, Alanis asserts that the "trial court erred in entering a final judgment ignoring [her] declaratory judgment action seeking to void the deed of trust lien and . . . set aside the unlawful foreclosure." In her fourth issue, Alanis argues that the trial court erred in disregarding the jury's findings regarding debt collection violations by Mann & Stevens. In her fifth issue, Alanis asserts that the trial court erred in applying a settlement credit and her own comparative liability to reduce her damages. In her sixth issue, Alanis argues that the trial court erred in "failing to apply the statutory elements of liability pursuant to" the Fraudulent Lien Statute found in Civil Practice and Remedies Code sections 12.002 and 12.006 and in failing to grant her motion for new trial based on newly discovered evidence.

## Declaratory Judgment

In her first three issues, Alanis argues that the trial court erred in denying her requests for a declaratory judgment voiding the deed of trust lien and setting aside the foreclosure on her property.

### A. Standard of Review

The Declaratory Judgment Act generally permits a person who is interested under a deed or other contract, or whose rights, status, or other legal relations are affected by a statute, to obtain a declaration of rights, status, or other legal relations thereunder. TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (Vernon 2015). As the plaintiff seeking the declaration, Alanis bore the burden of establishing her entitlement to the requested declaratory judgment. *See Saba Zi Exploration, L.P. v. Vaughn*, 448 S.W.3d 123, 129 & n.11 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding that, in declaratory judgment action, party seeking affirmative relief bears burden of proving its allegations).

We review declaratory judgments under the same standards as other judgments and decrees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (Vernon 2015); *Guthery v. Taylor*, 112 S.W.3d 715, 720 (Tex. App.—Houston [14th Dist.] 2003, no pet.). "We look to the procedure used to resolve the [declaratory judgment] issue at trial to determine the standard of review on appeal." *Guthery*, 112 S.W.3d at 720. Here, Alanis filed her motion for entry of declaratory

judgment following a jury trial and argued that she was entitled to declaratory judgment as a matter of law. The trial court denied Alanis's claims for declaratory judgment when it rendered its final judgment without making the requested declarations and ordered that all relief not expressly granted was denied. Thus, we review Alanis's declaratory judgment issues under the standard applicable to a party's challenge to a trial court's adverse ruling on an issue on which it had the burden of proof.

A party attacking the legal sufficiency of an adverse finding on an issue on which that party bears the burden of proof must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue, and it may prevail on appeal only if no evidence supports the court's finding and the contrary position is conclusively established. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 815–16 (Tex. 2005) (explaining nature of conclusive evidence). We sustain a no-evidence contention only if: (1) the record reveals a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810.

**B.    Request for Declaration Voiding Lien**

In her first issue, Alanis argues that "[t]he trial court erred in entering a final judgment ignoring [her] [d]eclaratory [j]udgment action seeking to void the deed of trust lien pursuant to" Texas Constitution article XVI, section 50(a)(6)(Q)(x). Alanis also sought a declaration requiring US Bank to forfeit all principal and interest pursuant to the Texas Constitution, Article XVI, Section 50(a)(6)(Q)(x) and to "convey title to the subject property back to Nancy Alanis free and clear of any debt associated with the deed of trust."

Article XVI, Section 50 of the Texas Constitution protects a homestead from forced sale to satisfy any debts except for certain enumerated types of debt. *In re Estate of Hardesty*, 449 S.W.3d 895, 904 (Tex. App.—Texarkana 2014, no pet.); *In re Dominguez*, 416 S.W.3d 700, 705 (Tex. App.—El Paso 2013, orig. proceeding). The specific provision cited by Alanis provides:

> [E]xcept as provided by Subparagraph (xi) of this paragraph, the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply. . . .

TEX. CONST. art. XVI, § 50(a)(6)(Q)(x).

Alanis asserts that her right to relief under this provision of the Constitution was established as a matter of law because she proved that she was never in default

on the loan. However, the evidence presented at trial does not support her contention. The jury's findings that US Bank violated the FDCPA and that BAC engaged in fraud in the course of foreclosing on the Property are not the equivalent of a finding that Alanis was never in default on the loan. Moreover, the record contains some evidence of Alanis's default on the loan: US Bank and BAC pointed to evidence during the trial indicating that Alanis failed to live in the Property as her homestead, failed to make proper monthly payments, failed to maintain the required insurance, and failed to pay required fees.

Thus, Alanis did not establish her entitlement to relief as a matter of law, and she failed to obtain any fact-findings regarding whether she was in default on the loan or whether the lender failed to comply with its obligations under the extension of credit, as required for relief under Article XVI, section 50(a)(6)(Q)(x) of the Texas Constitution. *See Francis*, 46 S.W.3d at 241.

We conclude that Alanis failed to establish her entitlement to declaratory judgment voiding the lien and requiring US Bank to forfeit all principal and interest of the extension of credit.

We overrule Alanis's first issue.

## C. Request for Declaration Setting Aside Foreclosure

In her second issue, Alanis argues that "[t]he trial court erred in entering a final judgment ignoring [her] [d]eclaratory [j]udgment action seeking to set aside

the unlawful foreclosure that failed to comply with Texas Property Code [section] 51.002(d) and/or Texas Finance Code [section] 392.304(a)(8)." In her third issue, Alanis argues that "[t]he trial court erred in entering a final judgment ignoring [her] [d]eclaratory [j]udgment action seeking to set aside the unlawful foreclosure after uncontroverted trial evidence showed [that she] performed under the Deed of Trust and timely remitted mortgage payments for the alleged periods of default."

Alanis relies in part on Property Code section 51.002(d), which provides:

> Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b). The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period required by this subsection, and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period.

TEX. PROP. CODE ANN. § 51.002(d) (Vernon 2014); *see also id.* § 51.002(e) ("Service of notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.").

Alanis asserts that she did not receive service of the notice of default. She testified that several letters that were sent by certified mail were returned before

27

she could claim them and that she did not know that US Bank and BAC's predecessors were proceeding with foreclosure. However, the record also contained evidence—including Alanis's own testimony, letters from the loan servicer, and the loan servicer's log—indicating that the loan servicer provided Alanis with notice that she was in default under the terms of the deed of trust. There was also some evidence, including the servicer's log and Diana Stevens' testimony, that the servicer and its attorney sent notice to Alanis by certified mail. Thus, Alanis did not establish a violation of Property Code section 51.002(d) as a matter of law.

Alanis also relies on Finance Code section 392.304(a)(8), which provides that a "debt collector may not use a fraudulent, deceptive, or misleading representation" such as "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer's debt status in a judicial or governmental proceeding." TEX. FIN. CODE ANN. § 392.304(a)(8) (Vernon 2006). "[A] foreclosure sale not conducted in accordance with the terms of the deed of trust gives rise to a cause of action to set aside the sale and the resulting trustee's deed." *Wells Fargo Bank, N.A. v. Robinson*, 391 S.W.3d 590, 593–94 (Tex. App.—Dallas 2012, no pet.) (citing *Univ. Savs. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1983)). When title to the property has not passed to a third party and the borrower's possession of the property has not been

28

materially disturbed, the proper remedy is to set aside the trustee's deed and to restore the borrower's title, subject to the note holder's right to establish the debt owed and foreclose on its lien. *Id.* at 594.

Here, the jury found that BAC and US Bank used "a fraudulent, deceptive or misleading representation" while engaging in debt collection, but it also found that BAC's violation was excused by the bona fide error affirmative defense. The jury further found that BAC, the loan servicer, committed fraud. However, Alanis failed to demonstrate that any of these violations warrant the relief she requested— setting aside the foreclosure. None of the jury's findings go to whether the court-ordered foreclosure that came about as the result of a separate proceeding was not conducted in accordance with the terms of the deed of trust or that the foreclosure proceedings otherwise violated Property Code section 51.002(d) or Finance Code section 392.304. Nor did Alanis establish, as a matter of law, that the title to the Property had not passed to a third party or that her possession of the Property had not been materially disturbed. *See Robinson*, 391 S.W.3d at 594. Alanis testified that the notices of default and other documents contained errors and that she did not receive notice of the foreclosure proceeding; but, as recounted above, there was conflicting evidence regarding these matters. Alanis failed to establish these violations as a matter of law and she failed to obtain jury findings resolving the disputed facts.

29

Alanis also argues that "uncontroverted trial evidence showed [that she] performed under the Deed of Trust and timely remitted mortgage payments for the alleged periods of default." However, as discussed above, she did not conclusively establish as a matter of law that she performed under the deed of trust.

We conclude that Alanis failed to establish her entitlement to declaratory judgment setting aside the foreclosure.

We overrule Alanis's second and third issues.

## Trial Court's JNOV Rulings

In her fourth issue, Alanis argues that the trial court erred in granting Mann & Stevens' motion for JNOV based on its bona fide error affirmative defense. In part of her sixth issue, Alanis argues that the trial court erred in denying her motion for JNOV on her claim under the False Lien Statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002 (Vernon Supp. 2014).

### A. Standard of Review

A trial court may grant a motion for JNOV if a directed verdict would have been proper, and it may disregard any jury finding on a question that has no support in the evidence. TEX. R. CIV. P. 301. A trial court may disregard a jury finding and render JNOV if the finding is immaterial or if there is no evidence to support one or more of the findings on issues necessary to liability. *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Spencer v. Eagle Star Ins. Co. of Am.*,

876 S.W.2d 154, 157 (Tex. 1994). A trial court properly enters a directed verdict (1) when a defect in the opposing party's pleadings makes them insufficient to support a judgment; (2) when the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or (3) when the evidence offered on a cause of action is insufficient to raise an issue of fact. *M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 629 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

In reviewing the rendition of JNOV, the reviewing court must determine whether there is any evidence upon which the jury could have made the finding. *See Tiller*, 121 S.W.3d at 713; *see also B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 15 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (holding that we review JNOVs under no-evidence standard). The reviewing court must view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 822, 827; *see Tiller*, 121 S.W.3d at 713 (holding that, in reviewing "no evidence" point, court views evidence in light that tends to support finding of disputed fact and disregards all evidence and inferences to contrary); *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001).

**B.     Mann & Stevens' JNOV on Bona Fide Error Affirmative Defense**

At trial, Alanis asserted a claim against Mann & Stevens for breach of the FDCPA as set out in Finance Code section 392.304(a)(8), which provides that a "debt collector may not use a fraudulent, deceptive, or misleading representation" such as "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer's debt status in a judicial or governmental proceeding." *See* TEX. FIN. CODE ANN. § 392.304(a)(8).   Alanis presented evidence that the reason for her default and the amount necessary to cure stated in the notice of foreclosure was incorrect, and, accordingly, the notice was inadequate.  She likewise asserted similar claims against the loan servicer, BAC, and against US Bank.

BAC and Mann & Stevens both asserted the affirmative defense that any violation of the FDCPA was the result of a bona fide error.  The FDCPA provides a defense for debt collectors accused of statutory violations upon proof that the violation "resulted from a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error." *Id.* § 392.401 (Vernon 2006). "In other words, the bona fide error defense requires a creditor to prove (1) that the violation was not intentional and resulted from a bona fide error and (2) that the creditor adopted procedures which were designed to avoid and prevent these types of errors." *Torres v. Mid-State Trust II*, 895 S.W.2d 828, 831 (Tex. App.—Corpus

Christi 1995, writ denied) (construing predecessor to current statute). "A 'bona fide error' is an error which is made in the course of a good-faith attempt at compliance with statutory requirements." *CA Partners v. Spears*, 274 S.W.3d 51, 71 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Callaway v. E. Tex. Gov't Credit Union*, 619 S.W.2d 411, 415 (Tex. Civ. App.—Tyler 1981, writ ref'd n.r.e.)). The debt collector must show that it used reasonable procedures to prevent the error which caused the violation in question. *Id.*

Both BAC (as the successor to Wilshire) and Mann & Stevens sought jury findings on their affirmative defense of bona fide error. The jury found in favor of BAC on its affirmative defense of bona fide error, and Alanis does not challenge this jury finding on appeal. However, the jury found that Mann & Stevens was not entitled to the affirmative defense of bona fide error. Accordingly, Mann & Stevens moved for JNOV, arguing, among other points, that it had established its entitlement to the bona fide error defense and that the jury's finding should be disregarded. The trial court agreed, concluding that Mann & Stevens was entitled to the bona fide error defense, and entered a take-nothing judgment in its favor.

The evidence established that Mann & Stevens was the attorney for the loan servicer Wilshire, BAC's predecessor; that Wilshire had hired the firm to foreclose on the Property; that all of Mann & Stevens' actions foreclosing on Alanis's Property were undertaken pursuant to that representation; and that Wilshire had

33

provided all of the information and documentation that Mann & Stevens used in pursuing the foreclosure. The notices of default sent both by Wilshire and by Mann & Stevens contained identical default amounts and were otherwise similar in the details regarding the status of Alanis's loan.

Alanis argues on appeal that Mann & Stevens failed to present any evidence that it had adopted procedures to prevent violations of the FDCPA. However, Diana Stevens testified about the procedures used by the law firm to prevent errors in receiving and using information from its clients, including procedures for double checking that a law firm employee had properly recorded the information received from the client and ensuring that the documents supplied by the client were proper and internally consistent. Stevens further testified that Mann & Stevens relied exclusively on the information provided to it by its client and that she did not believe that Mann & Stevens had committed any error, as it had used the information provided by the loan servicer.

Alanis did not provide any evidence contradicting Stevens's testimony regarding Mann & Stevens' policies and procedures for preventing errors, and she acknowledges on appeal that Mann & Stevens made "full reliance" on the loan servicer's figures. There was no evidence that Mann & Stevens had some other source of information independent of the loan servicer, nor was there any evidence contradicting Stevens's testimony that any violation of the statute was

unintentional. Likewise, there was no evidence that Mann & Stevens' reliance on the information and documentation it received from the loan servicer was unreasonable.

Thus, we conclude that there was no evidence to support the jury's finding on this issue and that Mann & Stevens established its entitlement to the bona fide error defense as a matter of law. *See* TEX. R. CIV. P. 301; *see also M.N. Dannenbaum, Inc.*, 840 S.W.2d at 629 (holding that default judgment, and therefore JNOV, is proper when evidence conclusively proves fact that establishes party's right to judgment as matter of law). Mann & Stevens presented uncontroverted evidence that the alleged violation was not intentional and resulted from a bona fide error and that it had adopted reasonable procedures designed to avoid and prevent errors. *See* TEX. FIN. CODE ANN. § 392.401; *Torres*, 895 S.W.2d at 831. Furthermore, the jury found that BAC, the loan servicer, was entitled to the bona fide error defense, and the uncontroverted evidence showed that Mann & Stevens relied exclusively on the information provided to it by the loan servicer. Alanis does not challenge the jury's finding regarding BAC's bona fide error defense on appeal. Accordingly, we conclude that the trial court did not err in granting Mann & Stevens' motion for JNOV. *See* TEX. R. CIV. P. 301; *Tiller*, 121 S.W.3d at 713.

We overrule Alanis's fourth issue.

35

## C. Denial of JNOV on Alanis's False Lien Claim

In part of her sixth issue, Alanis argues that the trial court erred in denying her motion for JNOV on her False Lien Claim. She argued below that the trial court should disregard the jury's finding that US Bank and BAC did not violate the False Lien Statute because she established such a violation as a matter of law.

The False Lien Statute provides:

(a) A person may not make, present, or use a document or other record with:

(1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

(2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States . . . evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

(3) intent to cause another person to suffer:

(A) physical injury;
(B) financial injury; or
(C) mental anguish or emotional distress.

TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(a). Thus, to establish a fraudulent-lien claim under this section, it was necessary for Alanis to establish that (1) US Bank and BAC made, presented, or used a document with knowledge that it was a fraudulent lien, (2) they intended that the document be given legal effect, and (3) they intended to cause Alanis physical injury, financial injury, or mental

36

anguish. *See id.*; *Merritt v. Davis*, 331 S.W.3d 857, 860 (Tex. App.—Dallas 2011, pet. denied).

Alanis provided no evidence that either US Bank or BAC intended to cause her physical injury, financial injury, or mental anguish. Alanis cites a notation in the loan servicer's log dated early 2009 that stated, "DON'T USE THE RI FIGS ABOVE BECAUSE IT'S NO LEGAL F&C PER DANNY TYE'S REQUEST [sic]," to demonstrate that Wilshire, the loan servicer whose actions formed the primary basis of her complaints, knew it should not proceed with foreclosure. She argued that this entry meant that Wilshire was aware that the foreclosure was not legal. US Bank and BAC asserted that this entry was a notation that Danny Tye had removed the charge for certain legal fees and costs related to the foreclosure from Alanis's account following their February 2009 phone discussion, and they supported their claim with evidence showing that the legal fees and costs were removed following that conversation. Given the speculative nature of this evidence from the loan servicer's log, we cannot say that Alanis established as a matter of law US Bank's or BAC's intent to harm her.

We conclude that Alanis failed to establish her entitlement to JNOV on this claim. *See Tiller*, 121 S.W.3d at 713; *Beckman*, 305 S.W.3d at 15. Thus, the trial court did not err in denying her motion. Because we affirm the trial court's denial of JNOV on Alanis's fraudulent lien claim, we need not address Alanis's argument

that she is likewise entitled to a reinstatement of the jury award for damages based on "lost time" under Civil Practice and Remedies Code section 12.006. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.006 (Vernon 2002) (providing that in some circumstances plaintiff who prevails on claim under Chapter 12 shall recover her "costs of bringing the action," which are statutorily defined as including "all court costs, attorney's fees, and related expenses of bringing the action, including investigative expenses").

We overrule this part of Alanis's sixth issue.

### Settlement Credit and Comparative Responsibility

In her fifth issue, Alanis asserts that the trial court erred in applying the doctrine of comparative responsibility and a settlement credit to reduce her damages. US Bank and BAC assert that the trial court properly reduced the amount of Alanis's damages by a percentage equal to her percentage of liability as found by the jury. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 33.002, 33.012(a) (Vernon 2015). They further argue that the trial court properly reduced the amount of Alanis's damages by the amount of her settlement with Vericrest, a previous loan servicer. *See id.* § 33.012(b).

### A.    Comparative Responsibility

Alanis argues that the trial court erred in applying the doctrine of "proportionate responsibility" to reduce the amount of damages awarded to her by

38

the percentage of her own comparative responsibility for her injuries, as found by the jury.

Civil Practice and Remedies Code section 33.012 addresses the amount of recovery:

(a) If the claimant is not barred from recovery under Section 33.001 [providing that a claimant may not recover damages if his percentage of responsibility is greater than 50 percent], the court shall reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a percentage equal to the claimant's percentage of responsibility.

(b) If the claimant has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the claimant with respect to a cause of action by the sum of the dollar amounts of all settlements.

TEX. CIV. PRAC. & REM. CODE ANN. § 33.012(a), (b).

Section 33.002 provides that Chapter 33 applies to "any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought." *Id.* § 33.002(a)(1). It also applies to any action brought under the Deceptive Trade Practices-Consumer Protection Act ("DTPA") in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought. *Id.* Section 33.002 specifically provides that it does not apply to actions to collect workers' compensation benefits, claims for exemplary

damages, and causes of action for damages arising from the manufacture of methamphetamine. *Id.* § 33.002(c).

Alanis argues that section 33.002 does not apply here because her suit sounded in contract rather than in tort. To support her proposition, she points out that US Bank and BAC filed for and obtained foreclosure of her Property under a deed of trust and promissory note. She also argues that US Bank and BAC relied on the language of the deed of trust and promissory note in arguing that they did not violate any provisions of the Property Code or Finance Code in foreclosing on Alanis's property.

To determine whether a claim sounds in tort or contract, we focus on the substance of the cause of action and not simply on the manner in which it was pleaded. *Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 288 (Tex. App.—Dallas 2015, no pet.). "[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam); *Clark*, 455 S.W.3d at 288. "The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Clark*, 455 S.W.3d at 289 (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).

40

We conclude that Alanis's claims are tort claims. Although the actions that Alanis complained of at trial involved the foreclosure on her Property pursuant to the promissory note and deed of trust, the substance of her claims at trial revolved around the allegedly wrongful acts of US Bank and BAC in connection with their attempt to collect the debt. The foreclosure on Alanis's Property was conducted in a separate suit, and the foreclosure itself was not an issue presented to the jury. Rather, the jury awarded Alanis damages based on its finding that US Bank violated the FDCPA and that BAC committed fraud—violations that were only tangentially related to the contractual relationship between the parties. *See Chapman Custom Homes, Inc.*, 445 S.W.3d at 718; *Clark*, 455 S.W.3d at 288.

Fraud is a common-law tort, and the FDCPA likewise provides a statutory remedy for tortious conduct committed in the course of collecting a debt. *See* TEX. FIN. CODE ANN. § 392.304(a)(8) (providing that "debt collector may not use a fraudulent, deceptive, or misleading representation" such as "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer's debt status in a judicial or governmental proceeding"); *Sanders v. City of Grapevine*, 218 S.W.3d 772, 779 (Tex. App.—Fort Worth 2007, pet. denied) (stating that fraud is intentional tort); *see also Houston Omni USA Co. v. Southtrust Bank Corp., N.A.*, No. 01-07-00433-CV, 2009 WL 1161860, at *3 (Tex. App.—Houston [1st Dist.] Apr. 30, 2009, no pet.) (mem. op.) (providing list of "various

41

torts" including fraud, violations of DTPA, and violations of federal fair debt collection practices act). The damages sought by Alanis included recovery for injuries, such as mental anguish, that went beyond recovery of economic loss of a contractual benefit. *See Chapman Custom Homes, Inc.*, 445 S.W.3d at 718; *Clark*, 455 S.W.3d at 288–89. Finally, we observe that the FDCPA is a DTPA tie-in statute, and causes of action under the DTPA are specifically enumerated as being within the scope of Chapter 33's provisions in addition to causes of action based on a tort. *See* TEX. FIN. CODE ANN. § 392.404(a) (Vernon 2006); TEX. CIV. PRAC. & REM. CODE ANN. § 33.002(a)(1).

Alanis also argues that the FDCPA is a strict liability statute and thus findings of proportionate liability or comparative fault are inappropriate. However, she provides no authority to support her construction of the FDCPA as a strict liability statute, nor does she provide any authority supporting her assertion that proportionate liability or comparative responsibility would not apply to her claims. Strict liability is relevant to a plaintiff's burden in establishing a culpable mental state. *See, e.g.*, *State v. Houdaille Indus., Inc.*, 632 S.W.2d 723, 728 (Tex. 1982) (discussing strict liability offense "where liability would not be contingent upon the allegation of a culpable mental state") (quoting *Zulauf v. State*, 591 S.W.2d 869, 872–73 (Tex. Crim. App. 1979)); *Black Bull Towing, LLC v. Ybarra*, No. 02-14-00227-CV, 2015 WL 3637933, at *6 (Tex. App.—Fort Worth June 11,

42

2015, pet. filed) (mem. op.) (stating that to recover basic damages under strict liability statute, no mental state was required to show violation). Strict liability is not relevant to the determination of whether a plaintiff's own negligent actions caused some portion of her damages. *See Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 594 (Tex. 1999) (holding in strict liability case that "a consumer's conduct other than the mere failure to discover or guard against a product defect is subject to comparative responsibility").

Thus, Alanis's arguments that Chapter 33 does not apply to her claims are unavailing, and the trial court did not err in considering Alanis's comparative liability for her injuries as found by the jury and reducing her damages accordingly.

## B. Settlement Credit

Alanis also argues that the trial court erred in reducing her damages award by applying a settlement credit in favor of US Bank and BAC for her pre-trial settlement with Vericrest, a previous loan servicer. Alanis's petition originally asserted claims for fraud and violations of the FDCPA and the Fraudulent Lien Statute against "all defendants severally," including US Bank, BAC, and Vericrest. Pre-trial, Alanis settled with Vericrest in the amount of $35,000. The jury then found US Bank liable for breach of the FDCPA and BAC liable for fraud. US Bank and BAC sought to apply the "one satisfaction rule" to receive a credit for

43

the amount of Alanis's settlement with Vericrest on the damages awarded on these claims.

We review a trial court's determination of the existence of or amount of a settlement credit for an abuse of discretion. *Dalworth Restoration, Inc. v. Rife-Marshall*, 433 S.W.3d 773, 780 (Tex. App.—Fort Worth 2014, pet. dism'd w.o.j.). "Under the one satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered." *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000) (citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991)). "This rule applies when multiple defendants commit the same act as well as when defendants commit technically different acts that result in a single injury." *Id.* "The rationale for this doctrine is that the plaintiff should not receive a windfall by recovering an amount in court that covers the plaintiff's entire damages, but to which a settling defendant has already partially contributed." *First Title Co. of Waco v. Garrett*, 860 S.W.2d 74, 78 (Tex. 1993).

A defendant seeking a settlement credit has the burden to prove its right to such a credit. *Utts v. Short*, 81 S.W.3d 822, 828 (Tex. 2002); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927 (Tex. 1998). Under the common law, the record must show, in the settlement agreement or otherwise, the settlement credit amount. *Utts*, 81 S.W.3d at 828; *Ellender*, 968 S.W.2d at 927 (citing *Garrett*, 860 S.W.2d at 78). Once the nonsettling defendant demonstrates a right to a settlement credit, the

44

burden shifts to the plaintiff to show that certain amounts should not be credited because of the settlement agreement's allocation of damages. *Utts*, 81 S.W.3d at 828; *Ellender*, 968 S.W.2d at 928 (recognizing that settling plaintiffs are in better position than nonsettling defendants to ensure that settlement awards are properly allocated).

Alanis argues that granting a settlement credit here was not appropriate because US Bank and BAC were not joint tortfeasors with Vericrest, nor were those parties held jointly liable. However, a settlement credit is appropriate when defendants commit technically different acts that result in a single injury. *See Casteel*, 22 S.W.3d at 390. Here, the jury awarded Alanis damages against US Bank and BAC on her claims for breach of the FDCPA and for fraud. In her live petition, she asserted these same causes of action against Vericrest, one of the previous loan servicers and predecessor to BAC. Thus, the record supports a conclusion that the previous loan owners and servicers and their successors-in-interest—the current appellees US Bank and BAC—produced a single injury to Alanis. *See id.*

US Bank and BAC likewise provided evidence of the amount of Alanis's settlement with Vericrest. *See Utts*, 81 S.W.3d at 828; *Ellender*, 968 S.W.2d at 927. The burden then shifted to Alanis to show that certain amounts should not be credited to US Bank and BAC because of the settlement agreement's allocation of

45

damages. *See Utts*, 81 S.W.3d at 828; *Ellender*, 968 S.W.2d at 927. However, Alanis did not provide any evidence that Vericrest's settlement related to some separate injury or should otherwise be allocated differently.[2] Accordingly, she failed to meet her burden. *See Utts*, 81 S.W.3d at 828; *Ellender*, 968 S.W.2d at 927–28.

We conclude that the trial court did not abuse its discretion in awarding US Bank and BAC a settlement credit.

We overrule Alanis's fifth issue.

---

[2] In her brief, Alanis argues that Vericrest settled with Alanis and "defined their allocated settlement sums as 'mental anguish damages.'" However, the record citation that she provided was to a statement in Mann & Stevens' supplement to its motion for JNOV which stated that "the damages [for the settlement agreement with Vericrest] appear to be characterized as 'mental anguish' damages." This speculative statement made in a party's motion does not constitute evidence of the allocation of the funds. Alanis also states that she showed why the settlement should not be applied, citing a portion of the record containing "Plaintiff's Objections & Request for Court to Consider Imposing Inherent Court Sanctions Against Defendants & Their Attorneys Prior to the Entry of Final Judgment & Response to the Law Offices of Mann & Stevens' Supplement to its Motion for Judgment Non Obstante Verdicto and Motion to Disregard Jury Findings." In this filing she asserted multiple complaints regarding US Bank's and BAC's efforts to obtain the Vericrest settlement agreement through discovery and a related protective order. However, she does not provide any argument or authority in her brief demonstrating how that particular post-trial motion demonstrates reversible error for the issue under review. Thus, she has failed to meet her burden to establish that certain settlement amounts should not be credited to US Bank and BAC in the final judgment because of the settlement agreement's allocation of damages. *See Utts v. Short*, 81 S.W.3d 822, 828 (Tex. 2002); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927–28 (Tex. 1998).

**Motion for New Trial**

In the remainder of her sixth issue, Alanis argues that the trial court erred in denying her motion for new trial.

## A.     Standard of Review

We review a trial court's ruling on a motion for new trial under an abuse of discretion standard. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010); *see Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 85 (Tex. 1992). To determine whether the trial court abused its discretion, we must decide "whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). We view the evidence submitted to the trial court in the light most favorable to the court's ruling, draw all legitimate inferences from the evidence, and defer to the trial court's resolution of conflicting evidence. *Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 892 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A trial court does not abuse its discretion with regard to factual matters so long as some evidence reasonably supports its decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

To prevail on her motion for a new trial based on new evidence, Alanis was required to establish that "(1) the evidence has come to [her] knowledge since the

trial, (2) [her] failure to discover the evidence sooner was not due to lack of diligence, (3) the evidence is not cumulative, and (4) the evidence is so material it would probably produce a different result if a new trial were granted." *See Williams*, 313 S.W.3d at 813.

## B.    Analysis

Alanis moved for new trial on the basis of newly discovered evidence. She asserted that on August 23, 2013—less than a month before trial—the new owner of the Property executed an assignment of the deed of trust assigning all right, title, and interest in the Property to Nationstar Mortgage, LLC.  She also cited various documents sent to her after trial regarding Nationstar's acquisition of the Property, including evidence that a new mortgage servicer was attempting to compel her to purchase insurance on the subject property and sent her information related to a force-placed insurance policy taken out on the property.  Alanis argued below that the failure to disclose this transaction was material to the issues presented at trial and that it constituted evidence of the filing of a fraudulent written document and an unlawful attempt to compel her to make payments on a note and deed of trust on the subject property after it was purchased by US Bank at the January 2010 foreclosure sale.

However, Alanis's claims at trial all revolved around the conduct of US Bank, BAC, and Mann & Stevens as it related to collecting on her home equity

loan and to completing the foreclosure on her property. All of the purported newly discovered evidence related to post-foreclosure activities by the parties, and many of the documents related to the actions of Nationstar, which is not a party to this suit. Thus, Alanis failed to establish that the newly discovered evidence was so material that it would probably have produced a different result if a new trial had been granted on her claims of fraud, breach of the FDCPA, and breach of the Fraudulent Lien Statute against US Bank, BAC, and Mann & Stevens. *See Williams*, 313 S.W.3d at 813. Accordingly, we cannot conclude that the trial court abused its discretion in denying her motion for new trial. *See id.*; *see also Intercontinental Terminals Co.*, 354 S.W.3d at 892 (holding that we view evidence submitted to trial court in light most favorable to court's ruling, draw all legitimate inferences from evidence, and defer to trial court's resolution of conflicting evidence).

We overrule the remainder of Alanis's sixth issue.

Having overruled all of Alanis's issues on appeal, we turn now to US Bank and BAC's cross-appeal.

## II. US Bank & BAC's Appeal

US Bank and BAC assert three issues on appeal, challenging the trial court's award of out-of-pocket damages to Alanis in the amount of $95,000, the trial

court's award of attorney's fees to Alanis, and the trial court's assessment of post-judgment interest.

## Sufficiency of the Evidence of Out-of-Pocket Damages

In their first issue, US Bank and BAC argue that the award of $95,000 in out-of-pocket damages to Alanis was against the great weight and preponderance of the evidence because she failed to provide any evidence supporting such an award.

## A.    Standard of Review

When addressing a challenge to the legal sufficiency of the evidence to support the jury's findings, we review the entire record, credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *See City of Keller*, 168 S.W.3d at 822, 827. We may not sustain a legal sufficiency, or "no evidence," point unless the record demonstrates that: (1) there is a complete absence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810; *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex.

2005). Evidence does not exceed a scintilla if jurors "would have to guess whether a vital fact exists." *City of Keller*, 168 S.W.3d at 813.

When reviewing a challenge to the factual sufficiency of the evidence to support the jury's findings, we consider all the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We must examine both the evidence that supports and that contradicts the judgment. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241–42 (Tex. 2001).

Under either type of challenge, the jury is the sole judge of the weight and credibility of the evidence, and it is entitled to resolve any conflicts in the evidence and to choose which testimony to believe. *See City of Keller*, 168 S.W.3d at 819. We therefore assume that jurors decided questions of credibility or conflicting evidence in favor of the verdict if they reasonably could do so. *Id.* at 820. We do not substitute our judgment for that of the jurors if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

Here, Alanis was awarded damages based on the jury's finding that BAC committed fraud and that US Bank violated the FDCPA. The jury question regarding damages on these claims asked the jury to award damages for "Out of Pocket Expenses." Because the charge did not instruct the jury on the legal definition of out-of-pocket damages in this context and no one objected to this

omission, we must identify the correct standard by which to measure the sufficiency of the evidence.

For common-law fraud, Texas recognizes two measures of direct damages: out-of-pocket and benefit-of-the-bargain. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998). The out-of-pocket measure of damages in fraud cases computes the difference between the value paid and the value received. *Id.* The FDCPA provides that "[a] person may sue for . . . actual damages sustained as a result of a violation of this chapter" and that Chapter 392 "does not affect or alter a remedy at law or in equity otherwise available to a debtor. . . ." TEX. FIN. CODE ANN. § 392.403(a) (Vernon 2006); *id.* § 392.404(b). Actual damages are those damages recoverable under common law. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997) (actual damages are either "direct" or "consequential").

However, because the jury was not instructed on the legal meaning of out-of-pocket damages, the jury was free to use the ordinary definition as commonly understood by non-lawyers, and we must likewise measure the sufficiency of the evidence by that standard. *Jerry L. Starkey TBDL, L.P. v. Graves*, 448 S.W.3d 88, 109 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 (Tex. 2005) (holding that sufficiency of evidence must be measured by jury charge when there has been no objection to it)).

Our sister court has "identified two ways in which jurors could have interpreted the words 'out of pocket.'" *Id.* "They could have read the phrase to have the same meaning that it does in the expressions 'out-of-pocket costs' or 'out-of-pocket expenses,' that is, an outlay of cash." *Id.* "Jurors also could have read the 'out of pocket' more broadly to mean a financial loss." *Id.* Thus, we must determine whether there is sufficient evidence of Alanis's financial loss related to US Bank's violation of the FDCPA and BAC's fraud in connection with collection on her debt to support the jury's award of out-of-pocket damages.

## B.    Analysis

Here, Alanis relies upon the following evidence to demonstrate her financial loss related to fraud and breach of the FDCPA: she obtained the 2006 home equity loan in the amount of $96,000 and incurred expenses repairing damage to the Property to obtain lender approval for the loan; she made loan payments on the loan in the amount of $849.57 per month through the time period that US Bank and BAC alleged that she was in default; and "the lender determined the value of [her] property as of December 17, 2009 was $72,000." Thus, she argues that the "jurors determined [that she] suffered an actual injury when spending her home equity funds to improve her property, making loan payments on the same and then ultimately, parting with the property through a fraudulent foreclosure action which [resulted in damages totaling] $201,993.12."

53

However, the record evidence and the findings of the jury do not support her argument. The jury did not find that US Bank and BAC committed a "fraudulent foreclosure." Rather, the jury found that US Bank violated a provision of the FDCPA and that BAC committed common-law fraud in attempting to collect on Alanis's loan. As we discussed above in our analysis of Alanis's issues seeking declaratory judgment, these findings do not establish that the foreclosure itself—which was conducted in a separate proceeding—was wrongful or fraudulent, and it is in that foreclosure proceeding that Alanis lost her property. Thus, any evidence of the value of the Property itself, including the "lender-determined value" established in December 2009, does not reflect an amount of financial loss resulting from US Bank's or BAC's wrongdoing as found by the jury.

Furthermore, the amount of the loan and Alanis's partial repayment of the loan do not constitute a financial loss resulting from fraud or statutory violations committed in the course of collecting that debt as alleged in this case. Alanis relies on *Norwest Mortgage, Inc. v. Salinas*, 999 S.W.2d 846 (Tex. App.—Corpus Christi 1999, pet. denied) in arguing that "[c]ourts have found 'mortgage payments made and loss of the use of the home' to be a proper element of damages." However, *Salinas* is legally and factually distinguishable from the present case. In *Salinas*, homeowners sued a creditor for recovery of damages under the DTPA in

54

connection with a loan agreement financing the construction and purchase of a home. *Id.* at 851. The builder failed to complete the house on time, but the plaintiffs were nevertheless required to begin making mortgage payment on the incomplete home, and the jury found that, in connection with the builder's failures, the creditor also breached its contract with the plaintiffs, engaged in fraud, negligent misrepresentation, gross negligence, and knowing deceptive and unconscionable acts. *Id.* at 853.

The plaintiffs in *Salinas* sought consequential damages based in part on the mortgage payments they had made during the time between when they became obligated to begin repaying the mortgage and when their home was actually completed. *Id.* at 864. They supported their pleadings with evidence of the exact amount of their payments and testimony that during the time in question, they were required to make two mortgage payments—one for the home in which they were living and one to the defendant for the home they were building. *Id.* The plaintiffs also testified that they were required to obtain outside loans to meet the severe financial obligations imposed by the circumstances, and the appellate court held that this evidence was sufficient to support the jury's award in that case. *Id.* Here, as discussed above, the jury found US Bank and BAC liable under a different statutory scheme and in different circumstances, so the reasoning in *Salinas* is inapplicable to Alanis's claims.

Alanis provided no other evidence regarding her financial loss flowing from US Bank's violation of the FDCPA or BAC's fraud. We conclude that the evidence supporting the jury's finding of out-of-pocket damages was legally insufficient. *See City of Keller*, 168 S.W.3d at 810. The trial court erred in awarding Alanis $95,000 in out-of-pocket damages.

We sustain US Bank and BAC's first issue and reverse the trial court's award of out-of-pocket damages.

We observe that US Bank and BAC do not challenge the portion of the judgment awarding Alanis $10,000 in damages for "loss of use" and $30,000 in mental anguish damages, for a total of $40,000. Because we have affirmed the application of the jury's finding that Alanis was 30% responsible for her damages, we must reduce the remaining damages accordingly, to $28,000. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.012(a) (providing that "the court shall reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a percentage equal to the claimant's percentage of responsibility"). We likewise affirmed the trial court's application of a settlement credit of $35,000, which, when applied here, results in Alanis receiving no net recovery. *See id.* § 33.012(b) ("If the claimant has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the claimant with respect to a cause of action by the sum of the dollar amounts of all settlements.").

**Attorney's Fees**

In their second issue, US Bank and BAC assert that the trial court's award of attorney's fees improperly included amounts for claims for which attorney's fees were not recoverable and amounts attributable to claims against a different defendant who settled prior to trial.

"A person who successfully maintains an action [for injunctive relief or actual damages sustained as a result of violation under Chapter 392] is entitled to attorney's fees reasonably related to the amount of work performed and costs." TEX. FIN. CODE ANN. § 392.403(b).  We review attorney's fees awards for an abuse of discretion.  *Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004).

Here, Alanis did not obtain a net recovery on her claim under the FDCPA against US Bank, the only claim that would permit the recovery of attorney's fees. Texas courts have not specifically addressed whether a claimant under the FDCPA can be considered to have "successfully maintained an action" for actual damages, and thus be entitled to attorney's fees, when that claimant receives no net recovery. However, courts have addressed this issue in the context of attorney's fees for a claim under the DTPA, and because the FDCPA is a DTPA tie-in statute and both statutes require that a party prevail on their claim, we find these cases instructive here.  *See* TEX. FIN. CODE ANN. § 392.404(a) (providing that violation FDCPA is

57

"a deceptive trade practice" and actionable under DTPA); TEX. BUS. & COM. CODE ANN. § 17.50(d) (Vernon 2011) (providing that consumer "who prevails" on DTPA claim "shall be awarded" reasonable and necessary attorney's fees); *see also Whiteside v. Hartung*, No. 14-97-00111-CV, 1999 WL 548211, at *7 (Tex. App.—Houston [14th Dist.] July 29, 1999, pet. denied) (mem. op.) (discussing predecessor to FDCPA, which also provided for attorney's fees to "[a] person who successfully maintains" action for actual damages, and stating, "This language permits an award of attorney's fees to a person who prevails in an action for actual damages under the Act").

Generally, a party requesting attorney's fees need not obtain a net recovery to be entitled to recover attorney's fees when the opposing party's counterclaim recovery offsets the consumer's recovery. *McKinley v. Drozd*, 685 S.W.2d 7, 10–11 (Tex. 1995); *Buccaneer Homes of Ala., Inc. v. Pelis*, 43 S.W.3d 586, 591 (Tex. App.—Houston [1st Dist.] 2001, no pet.). However, this no-net-recovery exception does not apply when a consumer—or, as here, a person seeking attorney's fees under FDCPA—has already settled for an amount greater than the damages found by the jury in the trial against the non-settling defendant. *Pelis*, 43 S.W.3d at 591 (citing *Hamra v. Gulden*, 898 S.W.2d 16, 19 (Tex. App.—Dallas 1995, writ dism'd w.o.j.)); *see also Imperial Lofts Ltd. v. Imperial Woodworks, Inc.*, 246 S.W.3d 1, 7 (Tex. App.—Waco 2007, pet. denied) (same); *Blizzard v.*

58

*Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 806–07 (Tex. App.—Dallas 1988, no writ) (same).

This is so because, as this Court has held, "[i]t is one thing to allow an attorney's fees award on a successful claim notwithstanding an opposing party's success on an offsetting claim," but it is quite another "to allow attorney's fees on a claim that, although successful, was paid in full before trial." *Pelis*, 43 S.W.3d at 591 (quoting *Hamra*, 898 S.W.2d at 19); *Blizzard*, 756 S.W.2d at 806. Because Alanis's damages were paid in full under the pretrial settlement with Vericrest, she may not recover attorney's fees here. *See Pelis*, 43 S.W.3d at 591.

We sustain US Bank's second issue. We reverse the trial court's award of attorney's fees and render judgment that Alanis is not entitled to collect her attorney's fees. [3]

---

[3] Because we render a take-nothing judgment against Alanis in favor of BAC and US Bank, we need not address US Bank and BAC's third issue challenging the trial court's award of post-judgment interest calculated from the date of the verdict rather than the date of the final judgment.

**Conclusion**

We reverse the portion of the trial court's judgment awarding Alanis $95,000 in out-of-pocket damages and render judgment that she recover nothing on that measure of damages. Because we affirm the trial court's reduction of Alanis's damages based on her own comparative responsibility for her damages and its application of the settlement credit, we likewise conclude that Alanis is not entitled to any further damages from US Bank and BAC, nor is she entitled to her attorney's fees. Accordingly, we reverse the portion of the trial court's judgment finding "that the damages to be recovered by Nancy Alanis are $70,000 because of said credit and jury finding" and render judgment that the damages to be recovered by Alanis are $0 because of the jury finding of comparative liability and settlement credit.

We also reverse the portion of the trial court's judgment awarding Alanis $207,150 in trial court attorney's fees and render judgment that Alanis take nothing on her claim for attorney's fees. We affirm the remainder of the trial court's judgment, including its take-nothing judgment in favor of Mann & Stevens.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Huddle, and Lloyd.