**Opinion issued January 20, 2022**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-20-00208-CV**

_____

**SANDEEP PATEL AND ERCC CONSTRUCTION COMPANY, LLC,**
**Appellants**

**V.**

**WARWICK CONSTRUCTION, INC., Appellee**

---

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 14-DCV-219641**

---

**MEMORANDUM OPINION**

Appellee Warwick Construction, Inc. sued Sandeep Patel and ERCC

Construction Company, LLC, and others who settled before trial, for unpaid amounts

owed on a contract to build a hospice facility. Warwick also alleged that Patel and

others committed fraud and engaged in a conspiracy to commit fraud. A jury found

that ERCC breached the construction contract and violated the Texas Prompt Pay Act, that Patel and ERCC violated the Texas Construction Trust Fund Act by misapplying funds and committed fraud against Warwick. The jury found the following amounts of damages: $463,406.48 for breach of contract; $373,000 for misapplication of trust funds; $33,000 for fraud, plus $500,000 each against Patel and ERCC as exemplary damages relating to fraud. The trial rendered judgment on the jury verdict, awarding Warwick damages for breach of contract, misapplication of trust funds, fraud, exemplary damages of $200,000 each (the statutory maximum) against Patel, pre- and post-judgment interest, statutory penalty interest for failing to promptly pay, and attorney's fees. The final judgment made ERCC and Patel "jointly and severally" liable for "$372,000.00 for ERCC's breach of contract and for Patel's [misapplication of trust funds], respectively," and awarded "an additional $91,406.48 for ERCC's breach of contract," which is the difference between the jury's award for breach-of-contract damages and $372,000.

Patel and ERCC appealed, raising seven issues. They assert that the trial court erred by: (1) assigning joint and several liability for breach-of-contract damages awarded solely against ERCC; (2) violating the "one satisfaction rule" and awarding double recovery by rendering judgment on both breach of contract and misapplication of trust funds; (3) failing to apply settlement credits to the misapplication of trust funds damages award; (4) rendering judgment on fraud when

2

the contract language allegedly precludes a finding of justifiable reliance; (5) rendering judgment on fraud when the evidence was legally insufficient and (6) factually insufficient; and (7) awarding constitutionally excessive exemplary damages based on legally and factually insufficient evidence.

Because we conclude that the one satisfaction rule applies in this case and that recovery is not viable on either the claim for misapplication of trust funds or the claim for fraud, we reverse the trial court's judgment and render take-nothing judgment on the misapplication of trust funds claim and the fraud claim, and we remand to the trial court for entry of judgment consistent with this opinion, including calculation of prejudgment interest.

**Background**

Sandeep Patel is the managing member of ERCC. Syed Anwar, Aman Jafar, and Khurram Ibrihim are the other members of ERCC, which was formed in 2011.[1] Patel, Anwar, Jafar, and Ibrihim also had an ownership interest in Altus Sugarland Realty, L.P. ("Altus"). Patel also owns Sterling Group of Engineering Companies ("Sterling Engineering"). Stanley Robinson worked for ERCC. Years before working for ERCC and while working for another company, Robinson hired and

---

[1] Anwar, Jafar, and Ibrihim settled with Warwick before trial, and they are not parties to this appeal.

worked with Tony Annan, who founded and remained as the president of Warwick Construction.

In late October 2013, Altus entered into a contract with ERCC to build the Altus Hospice Home ("Altus Hospice"), a health care facility to be located in Sugar Land, Texas. Sterling Engineering was designated as the "architect" for the project. The contract price was $3,200,000. The contract required ERCC as "contractor" to provide a payment and performance bond in the amount of $3,200,000. But ERCC, which had not yet done any construction projects, was unable to obtain a payment and performance bond.

Robinson invited Annan to bid on the Altus Hospice job, and Warwick Engineering submitted a bid. Although Annan later testified that he initially believed that Warwick would be contracting directly with Altus, Annan learned that ERCC would be contracting directly with Altus. In November 2013, ERCC as "design-builder" for the project entered into a contract with Warwick, as contractor, for the construction of Altus Hospice. The contract stated that it "represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral." The contract price was $3,200,000. The contract required Warwick to provide a payment and performance bond in the amount of $3,200,000. The parties later agreed to remove landscaping from the scope of work contractually assigned to Warwick. Warwick also agreed

that $352,000 of its contract price would instead be paid to Sterling Engineering for project management.

Warwick obtained a payment and performance bond, which Annan personally guaranteed. The bond was accepted by Altus in lieu of a bond obtained by ERCC. According to Patel's trial testimony, ERCC reimbursed Warwick for the cost of obtaining the payment and performance bond. Construction began, and, in accordance with the contract, Warwick submitted applications for payment on a monthly basis. The first five applications for payment were timely paid in full. According to Annan, the next six or seven applications were not timely paid, but they were paid by the time of trial. Annan testified that not being promptly paid may have hurt his relationships with his subcontractors and could harm his business in the future, but he did not quantify these costs. Annan also testified at trial that ERCC still owed Warwick $463,406.48 for work completed pursuant to change orders, which are changes to the scope of the construction project due to engineering requirements or owner choices.

Warwick filed a mechanic's and materialman's lien and a constitutional lien against Altus Hospice, and later Warwick filed suit to foreclose the liens. Warwick amended its petition, adding various claims against ERCC, Patel, and Sterling Engineering. Warwick settled with Altus, and Sterling Engineering declared bankruptcy. Warwick removed the case to the bankruptcy court, and when Sterling

5

Engineering's bankruptcy was finally resolved, the case was remanded to state court for disposition of Warwick's remaining claims against ERCC and Patel.

In response to interrogatories, and prior to the settlement with Anwar, Jafar, and Ibrihim, Warwick stated:

> After all just and lawful offsets, payments, and credits have been allowed, Warwick remains unpaid in the amount of $870,302.03 for the labor, materials, and equipment it provided to the Defendants for which it has not been paid, plus $352,000 which was fraudulently withheld from its contract based on the fraudulent misrepresentations that [Sterling Engineering] would act as the Project Manager in exchange for such funds.

The trial court held a pretrial hearing on the parties' motions in limine at which Warwick raised the issue of settlements. Warwick stated that it had received a settlement from Altus on its lien claim, that it had informed ERCC and Patel of the amount, and it asked for any comments about settlements to be excluded from trial. Warwick then asked the court how it preferred to address settlement credits:

> So the issue we wanted to talk about with you is how—how do you want us to do it with regard to our damages. For instance, we have a set damage amount, plus attorney's fees. We received a settlement from Altus. A portion of that settlement would go to the segregated attorney's fees that are just Altus related and then the rest goes to the principal of our damage number.
>
> We can do it one of two ways. We can either present our whole damage model without deducting anything out for the Altus settlement, and in the event we prevail at the time that judgment is entered, you apply the credit at that time to reduce our judgment by whatever we have received on the principal and the attorney's fees. Or we can present the reduced number taking out the amount that we've received that applies to the principal.

The trial court responded: "Let's do it that way." ERCC and Patel's counsel then stated on the record that Anwar, Jafar, and the estate of Ibrihim had reached a settlement with Warwick. The record indicates that Anwar, Jafar, and the estate of Ibrihim each agreed to pay Warwick $40,000, without joint and several liability, to fully settle the claims against them.

The next day, before opening statements, ERCC and Patel's counsel objected to Warwick pre-applying a settlement credit:

> We . . . believe it's appropriate for the plaintiff to put on all their evidence of whatever damages are. If they recover, then we can approach the Court as to how that settlement credit should be applied. Because they've asserted multiple causes of action, multiple theories of recovery against multiple defendants, and depending on how that shakes out, we don't think we can sort of pre- you know, do the pre-arithmetic on the potential settlement credit at this time.

The trial court disagreed, saying: "I think we can do the pre-arithmetic and I think that that would be a better way to get away from the jury issues that they really aren't going to be dealing with. . . [I]f you've already had those amounts in pre-settlement, then we need to take them out." Warwick's counsel agreed with the trial court saying: "Yes, that's correct. . . . [I]nstead of saying we're seeking $870,000, we're seeking a reduced amount . . . I've adjusted last night based on the $120,000 settlement that was recorded on the record yesterday. I took that out as well . . . ." The trial court stated: "We will continue with the order of the decision I made yesterday."

7

The case was tried to a jury. At trial, Patel acknowledged that Warwick was not paid for the labor and materials for the change orders at issue. Annan testified that ERCC owed Warwick $463,406.48 for charges arising from the change orders.[2] Annan acknowledged that ERCC informed Warwick that it needed more documentation relating to some of the change orders in order to authorize payment. Tiffany Nowak, who worked for Sterling Engineering and handled all the accounting for the project, also testified that ERCC did not receive sufficient documentation from Warwick on its payment requests relating to the change orders.

Nowak testified about the accounting records for the project. She said that ERCC had one bank account and did not maintain separate accounts for different projects. Nowak testified that ERCC received a total of $2,883,074.19 in payments from Altus for the Altus Hospice project, and $2,506,422.74 of that amount was paid to Warwick. She also testified that ERCC paid a total of $2,891,156.60, which was more than it received from Altus, to complete the project. Nowak further testified that ERCC repaid each of its four members their $5,000 initial investments.

Annan testified that, based on ERCC's accounting records, ERCC withheld $376,651.45 in money from Altus that should have been paid to Warwick in satisfaction of the labor and materials charges due to the change orders. Instead,

---

[2]    This figure represents the difference between the $870,302.03 alleged in response to discovery and the amount of settlement that Warwick deducted based on the court's determination at the pretrial conference.

ERCC used that money to pay its landscaping contractors and vendors and to pay other direct job costs ERCC incurred. Patel's testimony was equivocal. First, he testified that he used money that should have been paid to Warwick to pay for other direct project expenses, such as landscaping contractors, but he maintained that this was a permissible use of the funds. Later, he testified that ERCC paid Warwick "every dime" that was intended for Warwick, and he said that none of the money used to repay the initial investors came from a source that should have been paid to Warwick.

As to his allegations of fraud, Annan testified that Robinson, on behalf of ERCC, told him that ERCC was going to obtain a payment bond. Annan said that he signed the contract on behalf of Warwick because he trusted Robinson and relied on that representation. Annan testified that he read and understood the contract with ERCC before he signed it. He admitted that he did not ask to see ERCC's bond when he signed the contract, but he said: "They lied to me about the bond." He also testified that, unbeknownst to him and Warwick, ERCC used his bond to satisfy its contractual obligation to provide Altus with a payment and performance bond. Annan said: "They hid it from me." Patel, however, testified that Annan never asked ERCC to provide a payment bond and that ERCC would not have done so because the purpose of a payment and performance bond is to protect, ultimately, the project owner.

Annan testified that Warwick was damaged by ERCC's misrepresentation about the bond because it had no payment bond to rely on when ERCC failed to pay for labor and materials relating to the change orders. Annan also testified that Warwick was not alleging any fraud relating to the $352,000 payment to Sterling Engineering.

The jury unanimously found that: (1) ERCC breached the contract with Warwick; (2) ERCC failed to pay Warwick promptly for its work; (3) ERCC and Patel were trustees of trust funds received from the owner of the project, Altus; (4) Warwick was a beneficiary of trust funds for the project; (5) ERCC and Patel misapplied project trust funds; (6) ERCC and Patel committed fraud against Warwick; (7) clear and convincing evidence showed that Warwick was harmed by ERCC and Patel's fraudulent misrepresentation; (8) ERCC and Patel did not engage in a conspiracy to damage Warwick. The jury found the following amounts of damages:

| | |
|---|---|
| Breach of contract | $ 463,406.48 |
| Misapplication of trust funds | 372,000.00 |
| Fraud | 33,000.00 |
| Exemplary damages against ERCC | 500,000.00 |
| Exemplary damages against Patel | 500,000.00 |

Warwick moved for entry of judgment on the verdict, and ERCC and Patel responded. ERCC and Patel argued that Warwick was required to elect a remedy between breach of contract and misapplication of trust funds in violation of the TCTFA. They also argued that they were entitled to settlement credits as to the award of $372,000 on the misapplication of trust funds claim because Warwick sought the full amount of damages for this claim, instead of reducing the amount sought to account for settlement credits. ERCC and Patel also argued that the settlement credits exceeded the jury's award of damages for the misapplication of trust funds claim and the fraud claim. ERCC and Patel argued, in the alternative, that the exemplary damages should be reduced to $200,000 under the mandatory cap in the Texas Civil Practice and Remedies Code and further reduced to $132,000 to comport with due process.

The trial court vacated its first judgment, and it entered final judgment on December 20, 2019. The trial court accepted all of the jury's findings and rendered judgment that Warwick "have and recover from and against" ERCC and Patel "jointly and severally, $372,000 for ERCC's breach of contract and for Patel's [misapplication of trust funds in] violation of the Texas Construction Trust Fund statute, respectively . . . ." The trial court also awarded Warwick $91,406.48 against ERCC "for breach of contract, which when taken together with the amount in the foregoing paragraph equals the total amounts awarded by the jury for ERCC's

11

breach of contract . . . ." The court awarded $33,000 for fraud against ERCC and Patel "jointly and severally" and $200,000 each, from ERCC and Patel, as exemplary damages. The court awarded 18% statutory penalty interest from ERCC due to its violation of the Texas Prompt Payment Act in addition to 5.5% prejudgment interest from both ERCC and Patel. Finally, the trial court awarded costs of court and attorney's fees.

The trial court denied ERCC and Patel's motion to modify the judgment, and ERCC and Patel appealed.

## Analysis

ERCC and Patel raise seven issues on appeal. Because they control our disposition of this appeal, we focus on the second, third, and fourth issues. First, we consider whether the trial court's judgment violated the "one satisfaction rule." Because we agree that it does, we must consider how to reform the judgment to afford Warwick the maximum relief to which it is entitled. ERCC and Patel argue on appeal (1) that the entire damages award on Warwick's misapplication of trust funds claim is extinguished by the proper application of settlement credits and (2) that Warwick's fraud claim is entirely precluded because the parties' contract negates justifiable reliance as a matter of law.

## I.   Standard of review

"[W]hether the plaintiff has complained of a single, indivisible injury, and whether the defendant is entitled to credit one or more settlements against the judgment, are legal determinations that we review de novo." *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 109 n.8 (Tex. 2018). "Justifiable reliance usually presents a question of fact," but "the element can be negated as a matter of law when circumstances exist under which reliance cannot be justified." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 654 (Tex. 2018). We therefore review ERCC and Patel's second, third, and fourth issues de novo. *See Sky View*, 555 S.W.3d at 109.

## II.   One Satisfaction Rule

### A.   A party is entitled to one recovery for one injury.

A party may sue and seek damages on alternative theories of liability. *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998); *see Madison v. Williamson*, 241 S.W.3d 145, 159 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). "Under the one-satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered because of a particular injury." *TMRJ Holdings, Inc. v. Inhance Techs., LLC*, 540 S.W.3d 202, 208 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *see Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006). "There can be but one recovery for one injury and the fact that more than one

13

defendant may have caused the injury or that there may be more than one theory of liability, does not modify this rule." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 8 (Tex. 1991). "Although the traditional 'one satisfaction' principle applies to cases in which an injured plaintiff is wholly compensated by settling defendants or other third parties," it also applies "when a defendant commits technically different acts that result in a single injury."[3] *Madison*, 241 S.W.3d at 158–59. "The one satisfaction rule may limit a plaintiff's recovery even where the amounts awarded vary from claim to claim." *Lundy v. Masson*, 260 S.W.3d 482, 506 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

"When a defendant's acts result in a single injury, and the jury returns favorable findings on more than one theory of liability, the plaintiff is entitled to judgment on the theory affording him the greatest relief." *Saden v. Smith*, 415 S.W.3d 450, 465–66 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 367 (Tex. 1987)). Ordinarily the prevailing party will elect which remedy it prefers prior to entry of judgment, but when it does not the trial court should use the findings to render judgment affording the maximum relief. *Star Houston, Inc. v. Shevack*, 886 S.W.2d 414, 422 (Tex.

---

[3] "If a plaintiff pleads alternate theories of liability, a judgment awarding damages on each alternate theory may be upheld if the theories depend on separate and distinct injuries and if separate and distinct damages findings are made as to each theory." *Madison v. Williamson*, 241 S.W.3d 145, 158 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

App.—Houston [1st Dist.] 1994), *writ denied per curiam*, 907 S.W.2d 452, 452 (Tex. 1995); *accord Lundy*, 260 S.W.3d at 505–06.

**B.     Warwick advanced three liability theories arising from one injury.**

In their second issue, ERCC and Patel argue that the trial court's judgment violated the one satisfaction rule because Warwick was not required to elect a remedy and was awarded multiple damages for a single injury. ERCC and Patel maintain that the three claims on which Warwick prevailed—breach of contract, misapplication of trust funds, and fraud—all sought recovery for the same injury: the nonpayment of Warwick for labor and materials related to the Altus hospice construction project. Warwick's fifth amended petition was the live pleading at trial. In its live pleading, Warwick alleged that it had suffered at least $870,302.03 in breach-of-contract damages, $352,000 in fraud damages due to the reduction in contract price to pay Sterling Engineering to act as project manager, and unspecified damages for misapplication of trust funds under the Texas Construction Trust Fund Act.

**1.     Breach of contract**

Evidence at trial demonstrated that Warwick contracted with ERCC for the construction of the Altus hospice. Patel conceded that ERCC failed to pay Warwick for some labor and materials related to change orders that was owed under the contract, and the evidence was undisputed that the amount owed was $463,406.48.

15

Thus, liability and damages for breach of contract were established conclusively at trial. *See AKIB Constr. Inc. v. Shipwash*, 582 S.W.3d 791, 806 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (stating essential elements of breach-of-contract claim).

### 2.    Misapplication of trust funds

Warwick's misapplication of trust funds claim was based on the Texas Construction Trust Fund Act ("TCTFA"). *See* TEX. PROP. CODE §§ 162.001–.033. Under the TCTFA, "[c]onstruction payments are trust funds . . . if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state." *Id.* § 162.001(a). "A contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner who receives trust funds or who has control or direction of trust funds, is a trustee of the trust funds." *Id.* § 162.002. "An artisan, laborer, mechanic, contractor, subcontractor, or materialman who labors or who furnishes labor or material for the construction . . . of an improvement on specific real property . . . is a beneficiary of any trust funds paid or received in connection with the improvement." *Id.* § 162.003(a).

"A trustee who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the

16

beneficiaries of the trust funds, has misapplied the trust funds." *Id.* § 162.031. "'Current or past due obligations' are those obligations incurred or owed by the trustee for labor or materials furnished in the direct prosecution of the work under the construction contract prior to the receipt of the trust funds and which are due and payable by the trustee no later than 30 days following receipt of the trust funds." *Id.* § 162.005(2). The TCTFA provides that the misapplication of trust funds is a Class A misdemeanor or felony of the third degree, depending on the circumstances. *Id.* § 162.032. Although the statute lacks an express provision for a private civil right of action, this court has recognized a private right of action arising from a violation of the TCTFA because "a breach of a statutory duty normally gives rise to a private right of action on behalf of the injured person (or group of persons) for whose benefit the statute was enacted." *Lively v. Carpet Servs., Inc.*, 904 S.W.2d 868, 871 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

The TCTFA does not expressly require that the trustee and beneficiary of trust funds be in privity of contract, and the broad definitions of trustee and beneficiary indicate that they will not always be parties to the same contract. In this case, however, Warwick directly contracted with ERCC. And the damages Warwick alleged and proved at trial arose from ERCC's failure to pay for labor and materials supplied related to change orders. Although Warwick advanced a different model of computing damages—the difference between the money ERCC received from Altus

17

and the money paid to Warwick—the damages arose from the same injury as the breach of contract damages: ERCC's failure to pay money owed under the contract. On appeal Warwick concedes that all of the misapplication of trust funds damages overlapped with the breach of contract damages. We conclude that breach of contract and misapplication of trust funds were alternative theories of liability arising from the same injury.

### 3. Fraudulent inducement

Warwick also pleaded a claim for fraudulent inducement. In its pleadings and discovery responses, Warwick alleged that ERCC and Patel fraudulently induced it to enter the contract with ERCC by promising to obtain a payment and performance bond. It also alleged fraud arising from the $352,000 that was deducted from Warwick's contract price to pay Sterling Engineering to act as project manager, but at trial, Warwick disavowed this theory of recovery. Annan specifically testified that Warwick was not seeking any fraud damages from the reduction in its contract price to pay Sterling Engineering for project management.

"Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018) (stating elements of fraudulent inducement). "Fraudulent inducement is actionable when the misrepresentation is a false promise of future performance made with a present intent not to perform." *Id.*

18

The existence of a contract is an essential element of proof of a claim for fraudulent inducement. *Id.* "Two types of direct damages are available for common-law fraud: out-of-pocket damages, measured by the difference between the value expended versus the value received, and benefit-of-the-bargain damages, measured by the difference between the value as represented and the value received." *Id.*

At trial, Warwick's attorney argued in closing that ERCC and Patel had fraudulently induced Warwick to enter into the construction contract by representing that it would obtain a payment and performance bond that it never obtained.

On appeal, Warwick argues that it sought damages for nonpayment through its breach-of-contract and misapplication-of-trust-funds claims and damages for fraud. Warwick contends that the predicate for the fraud award is independent of nonpayment. Warwick argues on appeal that it sought out-of-pocket damages for fraud, specifically (1) the reduction of its contract price to pay Sterling Engineering for project management, (2) the lack of independent project management services, (3) damage to Warwick's relationships with subcontractors, and (4) costs incurred to settle the claims with its subcontractors.

The record does not support this argument. First, Annan testified that Warwick was not seeking any fraud damages from the reduction in its contract price to pay Sterling Engineering for project management. Second, Warwick did not introduce any evidence that it was injured by the absence of independent project

19

management services. Third, its evidence that its relationships with its subcontractors was damaged was limited to Annan's testimony about ERCC's failure to promptly pay Warwick. Annan testified that ERCC's failure to promptly pay "hurt our relationships with our subs," that Warwick "got through it, but it did do damage," and that "[i]t made them question our judgment who we went into business with." But Warwick provided no evidence quantifying those alleged out-of-pocket damages or additional expenses associated with settling claims with subcontractors. Instead, in closing Warwick relied on its evidence of damages due to ERCC's failure to pay for labor and materials associated with the change orders. In closing argument, Warwick's attorney argued:

> So Question 11 is what we call the damages question on the fraud claim. You have to figure out how much my client's been damaged by that fraud. . . . But at the very least, the 463,000 that they didn't pay us are our damages, and you may find that the trust funds as well, the fact that they got our money and kept it are also part of our fraud damages. So at a minimum it's the 463. You can add the trust fund claims to that as well for an additional 376, and you can put a number in the blank that you ladies and gentlemen feel is the appropriate measure of damages that the evidence has shown was suffered by my client.

We conclude that Warwick sought benefit-of-the-bargain damages for its fraudulent inducement claim, specifically asking the jury to award the amount "that they didn't pay us." This represents the same injury for which Warwick sought recovery under theories of breach of contract and misapplication of trust funds.

* * *

20

We conclude that Warwick's three successful liability theories all sought damages for the same injury—the nonpayment of labor and materials Warwick expended on construction of the Altus hospice. *See Madison*, 241 S.W.3d at 158–59 (jury may return favorable findings on alternative theories of liability). We sustain ERCC and Patel's second issue. Warwick is entitled to recover its damages based on the theory that afforded it the greatest or most favorable relief. *See id.* On appeal, ERCC and Patel raise additional challenges to the viability of judgment based on misapplication of trust funds and fraud.

## II. Application of settlement credits extinguishes recovery on misapplication of trust funds theory.

In their third issue, ERCC and Patel argue that the trial court erred by failing to apply settlement credits to Warwick's recovery on its misapplication-of-trust-funds claim. They contend that application of the settlement credits would extinguish Warwick's recovery for that claim entirely.

In addition to preventing a plaintiff from obtaining multiple recoveries on alternative theories of liability when it has suffered only one injury, the onesatisfaction rule also prevents a plaintiff from obtaining more than one recovery by crediting a non-settling defendant for payments made in settlement of damages from a singular injury. *Sky View*, 555 S.W.3d at 106–07. The Texas Supreme Court has explained:

> [W]hen a plaintiff files suit alleging that multiple tortfeasors are responsible for the plaintiff's injury, any settlements are to be credited against the amount for which the liable parties as a whole are found responsible, but for which only the non-settling defendant remains in court. The rationale for this doctrine is that the plaintiff should not receive a windfall by recovering an amount in court that covers the plaintiff's entire damages, but to which a settling defendant has already partially contributed. The plaintiff would otherwise be recovering an amount greater than the trier of fact has determined would fully compensate for the injury.

*First Title Co. of Waco v. Garrett*, 860 S.W.2d 74, 78 (Tex. 1993).

"A defendant seeking a settlement credit has the burden to prove its right to such a credit." *Utts v. Short*, 81 S.W.3d 822, 828 (Tex. 2002); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927 (Tex. 1998); *Alanis v. US Bank Nat'l Ass'n*, 489 S.W.3d 485, 509 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). Under the common law, the record must show the amount of the settlement credit. *Utts*, 81 S.W.3d at 828; *Ellender*, 968 S.W.2d at 927 (citing *Garrett*, 860 S.W.2d at 78); *Alanis*, 489 S.W.3d at 509. Once the non-settling defendant demonstrates a right to a settlement credit, the burden shifts to the plaintiff to show that certain amounts should not be credited because of the settlement agreement's allocation of damages, for example between actual and exemplary damages. *Utts*, 81 S.W.3d at 828; *Ellender*, 968 S.W.2d at 928 (recognizing that settling plaintiffs are in better position than non-settling defendants to ensure that settlement awards are properly allocated).

The record demonstrates that Warwick settled with Altus and with Anwar, Jafar, and the estate of Ibrihim. Warwick informed the trial court on the record

outside the presence of the jury that it had settled with Altus and sought to deduct the amount of settlement from the damages it asked the jury to find. Warwick explained that the total amount of damages it sought for nonpayment was $870,302.03. ERCC and Patel informed the court that Anwar, Jafar, and the estate of Ibrihim had settled with Warwick for $40,000 each, for a total of $120,000. Warwick told the court that it had deducted the $120,000 from the amount of damages it would ask the jury to find, which was $463,406.48 after deducting all settlements. The jury did find $463,406.48 as damages for breach of contract. ERCC did not dispute that amount at trial and has not challenged the amount or the application of settlement credits on appeal. Based on this information in the record, it is possible to calculate the settlement credits that that ERCC and Patel wish to apply to the misapplication of trust fund damages. *See Utts*, 81 S.W.3d at 828; *Ellender*, 968 S.W.2d at 927; *Alanis*, 489 S.W.3d at 509.

| | |
|---|---|
| Total amount of damages alleged by Warwick | $ 870,302.03 |
| Amount Warwick asked jury to find for breach of contract, after deduction of settlement amounts | 463,406.48 |
| Difference (Total of settlements) | 406,895.55 |
| Anwar, Jafar, Ibrihim settlements (total) | 120,000 |
| Difference (Altus settlement, estimated) | 28,6895.55 |

Because the record demonstrates the amount of settlement credits that ERCC and Patel seek to apply to the TCTFA claim, the burden shifted to Warwick to show that certain amounts should not be credited due to the allocation of damages in the

settlement agreements. *See Utts*, 81 S.W.3d at 828; *Ellender*, 968 S.W.2d at 928. But Warwick presented no evidence about the allocation of sums in the settlements.

Instead, Warwick argues that ERCC and Patel are not entitled to a credit based on its settlement with Altus, because that settlement was based on a lien and ERCC and Patel were not jointly and severally liable on the lien. In *Sky View*, the Texas Supreme Court held that a finding of joint liability is not required for the application of the one satisfaction rule, which is not limited to situations in which defendants have been found liable on the same cause of action. *Sky View*, 555 S.W.3d at 112–13; *see, e.g.*, *Waite Hill Servs.*, 959 S.W.2d at 185 (holding trial court erred by refusing an election-of-remedy request when the jury awarded "contract, as well as tort damages, and the jury awarded the identical amount in response to both damages questions"). Warwick's lien claim addressed the same injury as its claims for breach of contract, misapplication of trust funds, and fraud: nonpayment of labor and materials Warwick spent on the project. *See* TEX. PROP. CODE § 53.023(1) (mechanic's or materialman's lien secures payment for "labor done or material furnished for the construction").

Warwick also asserts that its settlements with Altus, Anwar, Jafar, and the estate of Ibrihim were already reflected in the economic damages it sought at trial. The record does not demonstrate that Warwick deducted any amounts reflective of the settlements from what it asked the jury to find on its

24

misapplication-of-trust-funds claim. Warwick relied on an entirely different method of calculating damages for misapplication of trust funds than it did for its breach-of-contract claim, which relied on Annan's undisputed testimony about how much remained unpaid. Warwick asserted that the proper measure of damages for its misapplication-of-trust-funds claim was the difference between the total amount of money that Altus paid ERCC ($ 2,891,156.60) and the total amount of money that ERCC paid Warwick ($ 2,506,422.74), or $ 384,733.76. Annan testified at trial ERCC received a total of $ 376,651.46 from Altus that ERCC should have—but failed to—disburse to Warwick. The jury awarded $ 372,000 as actual damages for misappropriation of trust funds. *See* Clerk's R. 466 ("What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Warwick for its damages, if any, that were proximately caused by such misapplication of trust funds?").

Although the jury here awarded different amounts of actual damages for breach-of-contract and misapplication of trust funds, our analysis that Warwick's recovery depends on an election between these claims due to the one satisfaction rule remains unchanged. *See Lundy*, 260 S.W.3d at 506 (noting that jury awarded different amounts of actual damages on alternative liability theories that addressed a singular injury).

Because the record demonstrates ERCC and Patel's entitlement to the application of settlement credits and because Warwick has not demonstrated that an

25

allocation in the settlement agreements precludes the application of settlement credits, we conclude that the trial court erred by failing to apply them. The jury awarded $372,000 in actual damages for misapplication of trust funds. The total amount of settlement credits is $406,895.55. We conclude that the settlement credits would entirely extinguish Warwick's recovery under this theory of liability, and we hold that recovery under Warwick's misapplication-of-trust-funds claim is not viable. We sustain ERCC and Patel's third issue.

### III. The parties' contract makes Warwick's reliance on representations that ERCC would obtain a bond unjustifiable.

In their fourth issue, ERCC and Patel argue that the trial court erred by rendering judgment for Warwick on its fraud claim because its reliance on a representation that ERCC would obtain a payment and performance bond was contradicted by the parties' contract. Warwick asserts that it could have relied on the representation despite the language in the contract. We disagree.

Warwick alleged that it was fraudulently induced to enter the contract with ERCC by representations that the project would be bonded and ERCC would obtain the payment and performance bond. Annan testified at trial that he would not have signed the contract on behalf of Warwick had he known that ERCC would not obtain the bond. He also testified that he had read and understood the contract.

"The elements of a claim for fraudulent inducement are '(1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without

26

knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury.'" *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 557 (Tex. 2019) (quoting *Anderson*, 550 S.W.3d at 614). "Because fraudulent inducement arises only in the context of a contract, the existence of a contract is an essential part of its proof." *Anderson*, 550 S.W.3d at 614.

"To prevail on a fraud claim, a 'plaintiff [must] show actual and justifiable reliance.'" *Mercedes-Benz USA*, 583 S.W.3d at 558 (quoting *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010)). "Whether a party's actual reliance is also justifiable is ordinarily a fact question, but the element may be negated as a matter of law when circumstances exist under which reliance cannot be justified." *Mercedes-Benz USA*, 583 S.W.3d at 558. "[A] party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms." *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015).

"In determining whether justifiable reliance is negated as a matter of law, courts must consider the nature of the parties' relationship and the contract." *JPMorgan Chase*, 546 S.W.3d at 654 (quotation omitted). A party must exercise ordinary care when entering into an arm's length transaction, and his failure to do so is not excused by his "mere confidence in the honesty and integrity of the other

27

party." *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962). A party cannot blindly rely on a representation when he knows, based on his experience and background, that he should investigate, but he fails to do so. *JPMorgan Chase*, 546 S.W.3d at 654. Reliance on a representation is not justified when there are "red flags" that indicate such reliance is unwarranted. *Grant Thornton*, 314 S.W.3d at 923. Reliance on an oral representation is also unjustified when the oral representation is "directly contradicted by the express, unambiguous terms of a written agreement between the parties." *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.–Houston [14th Dist.] 2003, pet. denied). A "party who enters into a written contract while relying on a contrary oral agreement does so at its peril" *Id.* at 859.

ERCC and Patel argue that the contract with Warwick directly contradicted the alleged representation that ERCC would obtain a payment and performance bond. The ERCC-Warwick contract incorporates "Exhibit E" in regard to "Insurance and Bonds." Exhibit E provides

ARTICLE E.2    SURETY BONDS

**§ E.2.1    The Contractor [Warwick] shall provide surety bonds as follows:**
*(Specify type and penal sum of bonds.)*

| Type | Penal Sum ($0.00) |
|---|---|
| Payment and Performance | 3,200,000.00 |

In Texas, payment and performance bonds are statutory and must comply with the provisions of Chapter 53, Subchapter I of the Texas Property Code ("Bond to Pay Liens or Claims"). *See* TEX. PROP. CODE §§ 53.201–.211. "An original contractor who has a written contract with the owner may furnish at any time a bond for the benefit of claimants." *Id.* § 53.201(a). The bond protects the owner and its property from claims by the same class of people who would otherwise be entitled to file a mechanic's and materialman's lien. *See id.* § 53.201(b) ("Bond"); *id.* § 53.205(a) ("Enforceable Claims"); *id.* § 53.021 ("Persons Entitled to Lien"). The Property Code establishes a broad category of people entitled to a lien, and the statute does not contemplate multiple payment and performance bonds on a particular project because the original contractor's bond would protect the owner from claims from tiers of subcontractors. *See* TEX. PROP. CODE § 53.021(a)(1) ("A person has a lien if . . . the person labors . . . or furnishes labor or materials for construction or repair in this state of . . . a house, building, or improvement . . . .").

The contract between ERCC and Warwick expressly required Warwick to provide a payment and performance bond in the total amount of the project, $3.2 million. In light of the statutory scheme pertaining to such bonds, this contract provision directly contradicts Warwick's reliance on the alleged representation that ERCC would obtain the exact same bond. *See JPMorgan Chase*, 546 S.W.3d at 660. We conclude that Warwick's fraud claim fails as a matter of law because the element

29

of justifiable reliance is negated by the contract. We sustain ERCC and Patel's fourth issue.

## Conclusion

Having concluded that recovery is not viable under either the misapplication-of-trust-funds claim or the fraud claim, we hold that Warwick's recovery must be limited to its breach-of-contract claim. We reverse the judgment of the trial court and render judgment that Warwick take nothing on its misapplication-of-trust-funds claim and its fraud claim, and we remand this case to the trial court for entry of judgment consistent with this opinion, including proper computation of prejudgment interest. We do not reach the remainder of ERCC and Patel's issues on appeal because it is not necessary to the disposition of this appeal. *See* TEX. R. APP. P. 47.1.

Peter Kelly
Justice

Panel consists of Chief Justice Radack and Justices Kelly and Landau.